

**EXHIBIT**

1

# PROMISSORY NOTE

$2,200,000.00

January 31, 2007

Third Avenue Developers, LLC
11123 Cauthorne Road
Glen Allen, Virginia 23059
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
1021 East Cary Street
Richmond, Virginia 23219
(Hereinafter referred to as "Bank")

## IMPORTANT NOTICE

**THIS NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A BORROWER AND ALLOWS BANK TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE.**

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Two Million, Two Hundred Thousand and No/100 Dollars ($2,200,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: acquire an approximately 140.40 acre parcel of land located along the south side of Whitehall Road (Route 673) and west of its intersection with Route 522, commonly known as Sandy Hook (the "Property") that is zoned for 46 single family residential lots and located in Goochland County, Virginia.

**SECURITY.** Borrower has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument of even date herewith.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note during each Interest Period from the date hereof at a rate per annum equal to 1-month LIBOR plus 2.8% ("Interest Rate"). Interest for each Interest Period shall accrue each day during such Interest Period, commencing on and including the first day to but excluding the last day. "Interest Period" means each period commencing on the last day of the immediately preceding Interest Period and ending on the same day of the month that interest is due 1 month thereafter; provided (i) the first Interest Period shall commence on the date hereof and end on the first day thereafter that interest is due, (ii) any Interest Period that ends in a month for which there is no day which numerically corresponds to the last day of the immediately preceding Interest Period shall end on the last day of the month and (iii) any Interest Period that would otherwise extend past the maturity date of this Note shall end on the maturity date of this Note. "LIBOR" means, with respect to each Interest Period, the rate for U.S. dollar deposits with a maturity equal to the number of months specified above, as reported on Telerate page 3750 as of 11:00 a.m., London time, on the second London business day before such Interest Period begins (or if not so reported, then as determined by the Bank from another recognized source or interbank quotation).

**INDEMNIFICATION.** Borrower shall indemnify Bank against Bank's loss or expense as a consequence

of (a) Borrower's failure to make any payment when due under this Note, (b) any payment, prepayment or conversion of any loan on a day other than the last day of the Interest Period, or (c) any failure to make a borrowing or conversion after giving notice thereof ("Indemnified Loss or Expense"). The amount of such Indemnified Loss or Expense shall be determined by Bank based upon the assumption that Bank funded 100% of that portion of the loan in the London interbank market.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective interest rate exceeding the nominal rate.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on March 5, 2007, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on that date that is twelve (12) months from the date hereof.

**COMMITMENT FEE.** Borrower shall pay to Bank a commitment fee of $11,000.00 due at or before the time of closing.

**EQUITY REQUIREMENT.** At closing, Borrower shall invest not less than $540,000.00 from Borrower's own funds towards the acquisition of the Property.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 4% of each payment past due for 15 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**GRACE/CURE PERIOD. Grace Period.** The failure of timely payment of the Obligations shall not be a Default until 5 days after such payment is due. **Cure Period.** Except as provided below, any Default, other than non-payment, may be cured within 10 days after written notice thereof is mailed to Borrower by Bank. Borrower's right to cure shall be applicable only to curable defaults and shall not apply, without limitation, to Defaults based upon False Warranty or Cessation; Bankruptcy. Borrower shall have the right to cure a Default only once during any 12 month period. Bank shall not exercise its remedies to collect the Obligations except as Bank reasonably deems necessary to protect its interest in collateral securing the Obligations during a cure period.

**DEFAULT.** If any of the following occurs and is not cured within the applicable Cure Period, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor,

535080 (Rev 24.0)

Note.doc
FUNBATTY 1/18/2007

or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**ANNUAL FINANCIAL STATEMENTS.** Borrower shall deliver to Bank, within 90 days after the close of each fiscal year, unaudited management-prepared financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. If unaudited statements are required, such statements shall be certified as to their correctness by a principal financial officer of Borrower.

**TAX RETURNS.** Borrower shall deliver to Bank, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, including, without limitation, K-1 statements for all Partnerships and Sub Chapter S Corporations, each of which shall be signed and certified by Borrower to be true and complete copies of such returns. In the event an extension is filed, Borrower shall deliver a copy of the extension within 30 days of filing.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**CONFESSION OF JUDGMENT.** Each Borrower hereby constitutes and appoints John G. Fox, Thomas G. Cooper, Sr. (each of whom is an officer of Bank), and Bank through an officer duly authorized by Bank (any of the foregoing may act), as the true and lawful attorneys-in-fact for them, in any or all of their names, place and stead, and upon the occurrence of a Default in the payment of the Obligations due under this Note, at maturity, or upon acceleration, to confess judgment against them or any of them, in favor of Bank, before the Clerk of the Circuit Court for County of Henrico, Virginia, in accordance with 1950 Code of Virginia, Section 8.01-431 et seq., and any successor statute, for all amounts owed with respect to the Obligations under and pursuant to this Note including, without limitation, all costs of collection and attorneys' fees in an amount equal to 15% of the Obligations then outstanding (which shall be deemed reasonable attorneys' fees for the purposes of this paragraph), and court costs, hereby ratifying and confirming the acts of said attorney-in-fact as if done by themselves. Upon request of Bank, each Borrower will execute an amendment or other agreement substituting attorneys-in-fact appointed to act for each Borrower hereunder.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither

the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and

interpreted under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA9618, 1021 East Cary Street, Richmond, Virginia 23219 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY

IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

Third Avenue Developers, LLC

By: _Henry L Wolf_ (SEAL)
Name: Henry L. Wilton
Title: Manager

By: _Charles J Messer_ (SEAL)
Name: Charles J. Messer
Title: Manager

1385364v1

# MODIFICATION NUMBER ONE
## TO PROMISSORY NOTE AND UNCONDITIONAL GUARANTY

Third Avenue Developers, LLC
11123 Cauthorne Road
Glen Allen, Virginia 23059
(Individually and collectively "Borrower")

Charles J. Messer
10 River Court Lane
Richmond, Virginia 23238

Henry L. Wilton
6421 Rigsby Road
Richmond, Virginia 23226
(Individually and collectively "Guarantor")

Wachovia Bank, National Association
1021 East Cary Street
Richmond, Virginia 23219
(Hereinafter referred to as "Bank")

THIS MODIFICATION NUMBER ONE TO PROMISSORY NOTE AND UNCONDITIONAL GUARANTY (this "Agreement") is entered into as of June 21__, 2007 by and between Bank, Borrower and Guarantor.

### RECITALS

Bank is the holder of a Promissory Note executed and delivered by Borrower, dated January 31, 2007, in the original principal amount of $2,200,000.00, as the same may have been heretofore modified, amended or supplemented (the "Note"), and certain other related loan documents;

The Note is secured by, among other things, a certain Credit Line Deed of Trust, Assignment of Rents and Security Agreement dated January 31, 2007, recorded February 1, 2007, in the Clerk's Office, Circuit Court, County of Goochland, Virginia (the "Clerk's Office") as Instrument Number 07-0000410, as modified by that certain First Modification to Credit Line Deed of Trust, Assignment of Rents and Security Agreement dated of even date herewith (collectively, the "Deed of Trust");

Bank has agreed to issue certain standby letters of credit on Borrower's behalf, such letters of credit not to exceed $250,000.00 in the aggregate;

Guarantor has executed a certain Unconditional Guaranty, dated of even date with the Note, as the same may have been heretofore modified, amended or supplemented (the "Guaranty"), with respect to the loan evidenced by the Note;

Borrower and Bank have agreed to modify the terms of the Note and the Guaranty.

In consideration of Bank's continued extension of credit and the agreements contained herein, the parties agree as follows:

### AGREEMENT

**ACKNOWLEDGMENT OF BALANCE.** Borrower acknowledges that the most recent Commercial Loan Invoice sent to Borrower with respect to the Obligations under the Note is correct.

**MODIFICATIONS.** The Note is hereby modified as follows:

1. The Note is hereby modified to increase the amount of the Note by $1,950,000.00 by (a) deleting the text "$2,200,000.00" where it appears on the top of the first page of the Note and replacing such text with "$4,150,000.00", and (b) deleting the first full paragraph of the Note in its entirety and replacing such paragraph with the following text:

> "Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Four Million One Hundred Fifty Thousand and No/100 Dollars ($4,150,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note")."

2. The Note is hereby modified by adding the following provision:

> "**NON-REVOLVING LINE OF CREDIT.** Borrower may borrow, and, upon the request of Borrower, Bank shall advance under this Note from time to time until the maturity hereof (each an "Advance" and together the "Advances"), so long as the total principal balance outstanding under this Note at any one time does not exceed the principal amount stated on the face of this Note. Bank's obligation to make Advances under this Note shall terminate if Borrower is in Default (as defined herein). As of the date of each proposed Advance, Borrower shall be deemed to represent that each representation made in the Loan Documents (as defined herein) is true as of such date. Advances, once repaid, may not be reborrowed."

3. The Note is hereby modified by deleting the "Interest Rate" provision on page 1 of the Note and replacing it in its entirety with the following:

> "**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note during each Interest Period from the date hereof at a rate per annum equal to 1-month LIBOR plus 2.6% ("Interest Rate"). Interest for each Interest Period shall accrue each day during such Interest Period, commencing on and including the first day to but excluding the last day. "Interest Period" means each period commencing on the last day of the immediately preceding Interest Period and ending on the same day of the month that interest is due 1 month thereafter; provided (i) the first Interest Period shall commence on the date hereof and end on the first day thereafter that interest is due, (ii) any Interest Period that ends in a month for which there is no day which numerically corresponds to the last day of the immediately preceding Interest Period shall end on the last day of the month and (iii) any Interest Period that would otherwise extend past the maturity date of this Note shall end on the maturity date of this Note. "LIBOR" means, with respect to each Interest Period, the rate for U.S. dollar deposits with a maturity equal to the number of months specified above, as reported on Telerate page 3750 as of 11:00 a.m., London time, on the second London business day before such Interest Period begins (or if not so reported, then as determined by the Bank from another recognized source or interbank quotation)."

4.     The Note is hereby modified by deleting the "Repayment Terms" provision on page 2 of the Note and replacing it in its entirety with the following:

"**REPAYMENT TERMS.**  This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on March 5, 2007, and continuing on the same day of each month thereafter until fully paid.  Borrower shall also make any mandatory principal curtailments described in that Loan Agreement by and between Bank and Borrower.  In any event, all principal and accrued interest shall be due and payable on June _21_, 2010 (the "Maturity Date")."

5.     In connection with this Agreement, Borrower shall pay to Bank a loan modification fee of $9,750.00 due at or before the time of closing.

All other terms and conditions of the Note shall remain the same.

It is mutually agreed by and between the parties hereto that this Agreement shall become a part of the Note by reference and that nothing herein contained shall impair the security now held for said indebtedness, nor shall waive, annul, vary or affect any provision, condition, covenant or agreement contained in the Note except as herein amended, nor affect or impair any rights, powers or remedies under the Note as hereby amended.  Furthermore, the Bank does hereby reserve all rights and remedies it may have as against all parties who may be or may hereafter become primarily or secondarily liable for the repayment of the indebtedness evidenced by the Note, as hereby amended.

Borrower promises and agrees to pay the indebtedness evidenced by the Note, as hereby amended, in accordance with the terms thereof and agrees to perform all of the requirements, conditions and obligations under the terms of the Note as hereby modified and amended, said documents being hereby ratified and affirmed.  The execution and delivery hereof shall not constitute a novation or modification of the lien, encumbrance or security title of any security instrument executed in connection with the Note, which security instrument shall retain its priority as originally filed for record. Borrower expressly agrees that the Note is in full force and effect and that Borrower has no right to setoff, counterclaim or defense to the payment thereof.

Any reference contained in the Note, as amended herein, to the Note shall hereinafter be deemed to be a reference to the Note as amended hereby.

Any reference contained in the Note, as amended herein, to the terms "Obligations" or "Loan Documents", shall include the Note, as amended hereby.

**ACKNOWLEDGMENTS AND REPRESENTATIONS.**  Borrower acknowledges and represents that the Note and other Loan Documents, as amended hereby, are in full force and effect without any defense, counterclaim, right or claim of set-off; that, after giving effect to this Agreement, no default or event that with the passage of time or giving of notice would constitute a default under the Loan Documents has occurred, all representations and warranties contained in the Loan Documents are true and correct as of this date, all necessary action to authorize the execution and delivery of this Agreement has been taken; and this Agreement is a modification of an existing obligation and is not a novation.

**COLLATERAL.**  Borrower acknowledges and confirms that there have been no changes in the ownership of any collateral pledged to secure the Obligations (the "Collateral") since the Collateral was originally pledged; Borrower acknowledges and confirms that the Bank has existing, valid first priority security interests and liens in the Collateral; and that such security interests and liens shall secure Borrower's Obligations, including any modification of the Note, if any, and all future modifications, extensions, renewals and/or replacements of the Loan Documents.

**GUARANTOR CONSENT.** Guarantor joins in the execution of this Agreement as evidence of its knowledge of the provisions hereof, and its consent to the provisions hereof and to the modifications herein made. Guarantor does hereby confirm, ratify and reaffirm the obligations contained in the Guaranty and does further confirm that the obligations guaranteed therein include, without limitation, those set forth in the Note, as hereby amended, and in the Deed of Trust, as amended, and that the guaranteed "Obligations" thereunder shall include (i) the Note, which has been amended hereby to increase the maximum principal amount thereunder by One Million Nine Hundred Fifty Thousand and No/100 Dollars ($1,950,000.00) from Two Million Two Hundred Thousand and No/100 Dollars ($2,200,000.00) to a maximum principal amount of Four Million One Hundred Fifty Thousand and No/100 Dollars ($4,150,000.00), plus interest, costs and other amounts provided therein, plus (ii) any letters of credit issued by the Bank on behalf of the Borrower (the "Letters of Credit"), such Letters of Credit not to exceed Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) in the aggregate. Guarantor does further confirm that such Guarantor has no right of set-off, counterclaim or defense to the obligations contained in the Guaranty. Any and all references in the Guaranty to the Note shall hereinafter be deemed to refer to the Note, as amended by this Agreement.

**MISCELLANEOUS.** This Agreement shall be construed in accordance with and governed by the laws of the applicable state as originally provided in the Loan Documents, without reference to that state's conflicts of law principles. This Agreement and the other Loan Documents constitute the sole agreement of the parties with respect to the subject matter thereof and supersede all oral negotiations and prior writings with respect to the subject matter thereof. No amendment of this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto. The illegality, unenforceability or inconsistency of any provision of this Agreement shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Agreement or the other Loan Documents. This Agreement and the other Loan Documents are intended to be consistent. However, in the event of any inconsistencies among this Agreement and any of the Loan Documents, the terms of this Agreement, and then the Note, shall control. This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. Terms used in this Agreement which are capitalized and not otherwise defined herein shall have the meanings ascribed to such terms in the Note. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **FINAL AGREEMENT.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY

WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS AGREEMENT. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS AGREEMENT.

**COUNTERPARTS.** This Agreement may be signed in any number of counterparts by the parties hereto and shall be the binding agreement of all of them upon execution by each of them of one or more copies hereof.

1442016v2

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF,** the undersigned have signed and sealed this Agreement the day and year first above written.

BORROWER:

THIRD AVENUE DEVELOPERS, LLC

By: _____ (SEAL)
Name: Henry L. Wilton
Title: Manager

By: _____ (SEAL)
Name: Charles J. Messer
Title: Manager

GUARANTOR:

_____ (SEAL)(
Henry L. Wilton, Individually

_____ (SEAL)(
Charles J. Messer, Individually

BANK:

WACHOVIA BANK, NATIONAL ASSOCIATION

By: _____ (SEAL)
Name: John A. Seaman, II
Title: SVP



# MODIFICATION NUMBER TWO
# TO PROMISSORY NOTE AND
# MODIFICATION NUMBER ONE TO LOAN AGREEMENT

Third Avenue Developers, LLC
11123 Cauthorne Road
Glen Allen, Virginia 23059
 (Individually and collectively "Borrower")

Charles J. Messer
10 River Court Lane
Richmond, Virginia 23238

Henry L. Wilton
12671 River Road
Richmond, Virginia  23238
(Individually and collectively "Guarantor")

Wachovia Bank, National Association
1021 East Cary Street
Richmond, Virginia 23219
(Hereinafter referred to as "Bank")

THIS MODIFICATION NUMBER TWO TO PROMISSORY NOTE AND MODIFICATION NUMBER ONE TO LOAN AGREEMENT (this "Agreement") is entered into as of July  27 , 2009 by and between Bank, Borrower and Guarantor.

## RECITALS

Bank is the holder of a Promissory Note executed and delivered by Borrower, dated January 31, 2007, in the original principal amount of $2,200,000.00 (the "Note"), as modified by that Modification Number One to Promissory Note and Unconditional Guaranty dated June 21, 2007, whereby the principal amount of the Note was increased by $1,950,000.00 to an aggregate principal amount of $4,150,000.00 (the "Modification"), and certain other loan documents, including without limitation, that certain Loan Agreement, of even date with the Modification, as the same may have been heretofore modified, amended or supplemented, by and between the Bank and the Borrower (the "Loan Agreement");

The Note is secured by, among other things, a certain Credit Line Deed of Trust, Assignment of Rents and Security Agreement dated January 31, 2007, recorded February 1, 2007, in the Clerk's Office, Circuit Court, County of Goochland, Virginia (the "Clerk's Office") as Instrument Number 07-0000410, as modified by that certain First Modification to Credit Line Deed of Trust, Assignment of Rents and Security Agreement dated June 21, 2007 and recorded in the Clerk's Office as Instrument Number 07- 000 3268  (collectively, the "Deed of Trust");

Guarantor has executed a certain Unconditional Guaranty, dated of even date with the Note, as the same may have been heretofore modified, amended or supplemented, including without limitation the Modification (the "Guaranty"), with respect to the loan evidenced by the Note;

Borrower and Bank have agreed to modify the terms of the Note and the Loan Agreement.

In consideration of Bank's continued extension of credit and the agreements contained herein, the parties agree as follows:

# AGREEMENT

**ACKNOWLEDGMENT OF BALANCE.** Borrower acknowledges that the most recent Commercial Loan Invoice sent to Borrower with respect to the Obligations under the Note is correct.

**MODIFICATIONS.** The Note is hereby modified as follows:

1.  The Note is hereby modified to decrease the amount of the Note by $1,150,000.00 by (a) deleting the text "$4,150,000.00" where it appears on the top of the first page of the Note and replacing such text with "$3,000,000.00", and (b) deleting the first full paragraph of the Note in its entirety and replacing such paragraph with the following text:

    "Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of Three Million and No/100 Dollars ($3,000,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note")."

2.  The Note is hereby modified by deleting the subparagraph entitled "Interest Rate" on page 1 of the Note and replacing it with the following:

    "**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of each Advance during each Interest Period from the date of such Advance at a rate per annum equal to 1-month LIBOR plus 3.10% ("Interest Rate"). Interest for each Interest Period shall accrue each day during such Interest Period, commencing on and including the first day to but excluding the last day. "Interest Period" means, in respect of each Advance, each period commencing on the last day of the immediately preceding Interest Period and ending on the same day of the month that interest in respect of such Advance is due 1 month thereafter; provided (i) the first Interest Period shall commence on the date of such Advance and end on the first day thereafter that interest in respect of such Advance is due, (ii) any Interest Period that ends in a month for which there is no day which numerically corresponds to the last day of the immediately preceding Interest Period shall end on the last day of the month and (iii) any Interest Period that would otherwise extend past the maturity date of this Note shall end on the maturity date of this Note. "LIBOR" means, with respect to each Interest Period, the rate for U.S. dollar deposits with a maturity equal to the number of months specified above, as reported on Telerate Successor Page 3750 as of 11:00 a.m., London time, on the second London business day before such Interest Period begins (or if not so reported, then as determined by the Bank from another recognized source or interbank quotation)."

3.  The Note is hereby modified by deleting the subparagraph entitled "Repayment Terms" on page 2 of the Note and replacing it with the following:

    "**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on the 5th day of the first full month from the date hereof, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on April 30, 2010."

4.  The Note is hereby modified by deleting the subsection entitled "Cross Default" in the subparagraph entitled "Default" on page 3 and replacing it with the following:

"**Cross Default**.  At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall having the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest).  Borrower acknowledges and agrees that Wilton Development Corporation and Wilton Development of Steamboat, LLC are each Affiliates of the Borrower for the purposes hereof."

5.      Any loan proceeds available under the Note, after the principal amount available is decreased pursuant to the terms hereof, shall be used to immediately fund the Loan's interest reserve.

6.      The Loan Agreement is hereby modified to decrease the amount of the Note by $1,150,000.00 by deleting "$4,150,000.00" wherever it appears in the Loan Agreement, and replacing it with "$3,000,000.00".

7.      The Loan Agreement is hereby modified by deleting the subparagraph entitled "Mandatory Principal Curtailments" on page 7 of the Loan Agreement.

8.      As a condition to the modifications stated herein, Borrower's principal, Henry L. Wilton, and some of Borrower's Affiliates (collectively, "Wilton"), have agreed to grant Bank certain additional collateral as security for the repayment of the Note and certain other obligations of Borrower and/or its principals or Affiliates to Bank (collectively, the "Wilton Debt").  Upon the closing hereof, Wilton shall execute and deliver to Bank deeds or trust or mortgages, as applicable, with regard to the real property collateral described more particularly on Exhibit A attached hereto and incorporated herein (the "Additional Collateral").  Wilton agrees that it shall use 50% of the Net Proceeds it receives from the sale or other transfer of any portion of the Additional Collateral to pay down the Wilton Debt (the "Bank's Proceeds").  As used herein, Net Proceeds shall be defined as the gross sales price received from the sale of any parcel, lot or other portion of the Additional Collateral, less any amounts due in connection with the existing first lien and all reasonable and customary third-party closing costs.  The Bank's Proceeds shall be used to pay down the Wilton Debt as follows: (i) 40% of the Bank's Proceeds from each closing shall be used to pay down the Wealth Note (as defined on Exhibit B attached hereto and incorporated herein), until paid in full, and (ii) the balance of the Bank's Proceeds from each closing shall be used to pay down the Real Estate Notes (as defined on Exhibit B attached hereto and incorporated herein) pari passu.

All other terms and conditions of the Note and the Loan Agreement shall remain the same.

It is mutually agreed by and between the parties hereto that this Agreement shall become a part of the Note and Loan Agreement by reference and that nothing herein contained shall impair the security now held for said indebtedness, nor shall waive, annul, vary or affect any provision, condition, covenant or agreement contained in the Note except as herein amended, nor affect or impair any rights, powers or remedies under the Note as hereby amended.  Furthermore, the Bank does hereby reserve all rights and remedies it may have as against all parties who may be or may hereafter become primarily or secondarily liable for the repayment of the indebtedness evidenced by the Note, as hereby amended.

Borrower promises and agrees to pay the indebtedness evidenced by the Note, as hereby amended, in accordance with the terms thereof and agrees to perform all of the requirements, conditions and obligations under the terms of the Note as hereby modified and amended, said documents being hereby ratified and affirmed.  The execution and delivery hereof shall not constitute a novation or modification of the lien, encumbrance or security title of any security instrument executed in connection with the Note,

which security instrument shall retain its priority as originally filed for record. Borrower expressly agrees that the Note is in full force and effect and that Borrower has no right to setoff, counterclaim or defense to the payment thereof.

Any reference contained in the Note or Loan Agreement, as amended herein, to the Note or Loan Agreement shall hereinafter be deemed to be a reference to such document as amended hereby.

Any reference contained in the Note or Loan Agreement, as amended herein, to the terms "Obligations" or "Loan Documents", shall include the Note and Loan Agreement, as amended hereby.

**ACKNOWLEDGMENTS AND REPRESENTATIONS.** Borrower acknowledges and represents that the Note and other Loan Documents, as amended hereby, are in full force and effect without any defense, counterclaim, right or claim of set-off; that, after giving effect to this Agreement, no default or event that with the passage of time or giving of notice would constitute a default under the Loan Documents has occurred; all representations and warranties contained in the Loan Documents are true and correct as of this date, all necessary action to authorize the execution and delivery of this Agreement has been taken; and this Agreement is a modification of an existing obligation and is not a novation.

**COLLATERAL.** Borrower acknowledges and confirms that there have been no changes in the ownership of any collateral pledged to secure the Obligations (the "Collateral") since the Collateral was originally pledged; Borrower acknowledges and confirms that the Bank has existing, valid first priority security interests and liens in the Collateral; and that such security interests and liens shall secure Borrower's Obligations, including any modification of the Note or Loan Agreement, if any, and all future modifications, extensions, renewals and/or replacements of the Loan Documents.

**GUARANTOR CONSENT.** Guarantor joins in the execution of this Agreement as evidence of its knowledge of the provisions hereof, and its consent to the provisions hereof and to the modifications herein made. Guarantor does hereby confirm, ratify and reaffirm the obligations contained in the Guaranty and does further confirm that the obligations guaranteed therein include, without limitation, those set forth in the Note, as hereby amended. Guarantor does further confirm that such Guarantor has no right of set-off, counterclaim or defense to the obligations contained in the Guaranty. Any and all references in the Guaranty to the Note shall hereinafter be deemed to refer to the Note, as amended by this Agreement.

**MISCELLANEOUS.** This Agreement shall be construed in accordance with and governed by the laws of the applicable state as originally provided in the Loan Documents, without reference to that state's conflicts of law principles. This Agreement and the other Loan Documents constitute the sole agreement of the parties with respect to the subject matter thereof and supersede all oral negotiations and prior writings with respect to the subject matter thereof. No amendment of this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto. The illegality, unenforceability or inconsistency of any provision of this Agreement shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Agreement or the other Loan Documents. This Agreement and the other Loan Documents are intended to be consistent. However, in the event of any inconsistencies among this Agreement and any of the Loan Documents, the terms of this Agreement, and then the Note, shall control. This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. Terms used in this Agreement which are capitalized and not otherwise defined herein shall have the meanings ascribed to such terms in the Note. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED

HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES.  EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.  **FINAL AGREEMENT.**  This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.  There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.**   TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS AGREEMENT.   EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS AGREEMENT.

**COUNTERPARTS.**  This Agreement may be signed in any number of counterparts by the parties hereto and shall be the binding agreement of all of them upon execution by each of them of one or more copies hereof.

6395915_3.DOC

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF,** the undersigned have signed and sealed this Agreement the day and year first above written.

**BORROWER:**

THIRD AVENUE DEVELOPERS, LLC

By: _____ (SEAL)
Name:  Henry L. Wilton
Title:    Manager

By: _____ (SEAL)
Name:  Charles J. Messer
Title:    Manager

**GUARANTOR:**

_____ (SEAL)
Henry L. Wilton, Individually

_____ (SEAL)
Charles J. Messer, Individually

**BANK:**

WACHOVIA BANK, NATIONAL ASSOCIATION

By: _____ (SEAL)
Name: _____
Title: _____

**EXHIBIT A**

**LIST OF ADDITIONAL COLLATERAL**

1. 108 OCEAN BLVD, SOUTHERN SHORES, NC - LOTS 11 AND 12, SECTION 2, BLOCK 17 SOUTHERN SHORES

2. 14 TWELTH AVENUE, SOUTHERN SHORES, NC- LOT 23, BLK 58, SEA CREST VILLAGE, PARCEL# 021312-000; PIN# 986-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

3. 29 SIDNEY PEAK, STEAMBOAT SPRINGS, CO - LOT 29, SIDNEY PEAK RANCH FILING NO.3 TOTAL 50.15A, ROUTT COUNTY, CO

4. 31040 WILLOW LN, STEAMBOAT SPRINGS, CO - LOT 4, WILLOW PARK SUBDIVISION, ROUTT COUNTY, CO, PARCEL #R2011170

5. 1624 GRAYSTONE DRIVE, STEAMBOAT SPRINGS, CO 80487, ROUTT COUNTY, CO - LOT 5, STONEBRIDGE PARK SUBDIVISION - ASSESSOR PARCEL #218500005

6. 3170 THISTLE ST, PARK CITY, UT - SUMMIT COUNTY - SOL-2-A-100

7. 14 LOTS IN BENTLEY SUBDIVISION, RICHMOND, HENRICO COUNTY, VA

8. 13 LOTS IN TURNER FOREST SUBDIVISION, RICHMOND, HENRICO COUNTY (VARINA DISTRICT), VA

**EXHIBIT B**

**DESCRIPTION OF WILTON DEBT**

1.     Promissory Note executed and delivered by Henry L. Wilton, dated October 26, 2007, in the original principal amount of $1,400,000.00 (the "Wealth Note").

2.     Promissory Note executed and delivered by Wilton Development of Steamboat, LLC, dated February 14, 2007, in the original principal amount of $7,514,000.00 (the "Steamboat Note").

3.     Promissory Note executed and delivered by Wilton Development Corporation, dated July 27, 2005, in the original principal amount of $4,000,000.00, as modified by that certain Modification Number 1 to Promissory Note and Loan Agreement dated October 12, 2007, whereby the principal amount was increased by $500,000.00 to an aggregate principal amount of $4,500,000.00 (collectively, the "WDC PLOC Note").

4.     Promissory Note executed and delivered by Wilton Development Corporation, dated May 5, 2006, in the original principal amount of $1,500,000.00, as modified by that certain Modification Number 1 to Promissory Note and Loan Agreement dated December 29, 2006, whereby the principal amount was increased by $700,000.00 to an aggregate principal amount of $2,200,000.00, as renewed and modified by that certain Promissory Note dated June 1, 2007 in the principal amount of $2,200,000.00 (collectively, the "WDC LOC Note", together with the Steamboat Note and WDC PLOC Note, the "Real Estate Notes").

# UNCONDITIONAL GUARANTY

January 31, 2007

Third Avenue Developers, LLC
11123 Cauthorne Road
Glen Allen, Virginia. 23059
(Hereinafter referred to as "Borrower")

Henry L. Wilton
6421 Rigsby Road
Richmond, Virginia  23226
(Hereinafter referred to as "Guarantor")

Wachovia Bank, National Association
1021 East Cary Street
Richmond, Virginia  23219
(Hereinafter referred to as "Bank")

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS GUARANTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

To induce Bank to make, extend or renew loans, advances, credit, or other financial accommodations to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, advances, credit, or other financial accommodations made, extended or renewed to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank under that certain Promissory Note of even date herewith in the original principal amount of $2,200,000.00, the Loan Documents as defined below, and all obligations of Borrower to Bank or any of its affiliates under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), and all extensions, modifications and renewals thereof, (collectively, the "Guaranteed Obligations").

Guarantor further covenants and agrees:

**GUARANTOR'S LIABILITY.**  This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection.  The parties to this Guaranty are jointly and severally obligated together with all other parties obligated for the Guaranteed Obligations.  This Guaranty does not impose any obligation on Bank to extend or continue to extend credit or otherwise deal with Borrower at any subsequent time.  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Bank, and the returned payment shall remain payable as part of the Guaranteed Obligations, all as though such payment had not been made.  Except to the extent the provisions of this Guaranty give Bank additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Bank by Guarantor; and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any other agreement of guaranty given to Bank and other guaranties of the Guaranteed Obligations.

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Bank at the address for notices provided herein. Such termination shall be effective only with respect to Guaranteed Obligations arising more than 15 days after the date such written notice is received by said Bank officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Bank of said notice if such Guaranteed Obligations are a result of Bank's obligation to make advances pursuant to a commitment, or are based on Borrower's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time), entered into prior to expiration of the 15 day notice period, or are a result of advances which are necessary for Bank to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor **consents and agrees that Bank (and, with respect to swap obligations, its affiliates) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder:** (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Borrower or any other guarantor with Bank; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Bank in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Borrower, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Bank; all in such manner and upon such terms as Bank may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Bank relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS.** **Guarantor waives and releases the following rights, demands, and defenses** Guarantor may have with respect to Bank (and, with respect to swap obligations, its affiliates) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Borrower or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Bank (and, with respect to swap obligations, its affiliates) make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24, Mississippi Code Ann. Section 87-5-1, California Civil Code §§ 2787 to 2855 inclusive, and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Guarantor; (d) that Bank or its affiliates preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Bank's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any other guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be entitled; (g) the right to assert against Bank or its affiliates any defense (legal or equitable), set-

off, counterclaim, or claim that Guarantor may have at any time against Borrower or any other party liable to Bank or its affiliates; (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Bank or its affiliates' lien on any collateral, of the Loan Documents, or of any other guaranties held by Bank; (i) any right to which Guarantor is or may become entitled to be subrogated to Bank or its affiliates' rights against Borrower or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank or its affiliates against Borrower or any security which Bank or its affiliates now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (k) the right to marshalling of Borrower's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Bank or its affiliates for information regarding Borrower or any collateral.

**FINANCIAL CONDITION.**  Guarantor warrants, represents and covenants to Bank and its affiliates that on and after the date hereof:  (a) the fair saleable value of Guarantor's assets exceeds its liabilities, Guarantor is meeting its current liabilities as they mature, and Guarantor is and shall remain solvent; (b) all financial statements of Guarantor furnished to Bank are correct and accurately reflect the financial condition of Guarantor as of the respective dates thereof; (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Guarantor; (d) there are not now pending any court or administrative proceedings or undischarged judgments against Guarantor, no federal or state tax liens have been filed or threatened against Guarantor, and Guarantor is not in default or claimed default under any agreement; and (e) at such reasonable times as Bank requests, Guarantor will furnish Bank and its affiliates with such other financial information as Bank and its affiliates may reasonably request.

**INTEREST AND APPLICATION OF PAYMENTS.**  Regardless of any other provision of this Guaranty or other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations.  Monies received from any source by Bank or its affiliates for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Bank and its affiliates.

**DEFAULT.**  If any of the following events occur, a default ("Default") under this Guaranty shall exist:  (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor or any general partner of or the holder(s) of the majority ownership interests of Guarantor; and/or (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Guaranteed Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or its affiliates, which shall be due in accordance with and governed by

the provisions of said swap agreements, and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity. Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Bank's and its affiliates' reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate, or bankruptcy proceeding.

**SUBORDINATION OF OTHER DEBTS.** Guarantor agrees: (a) to subordinate the obligations now or hereafter owed by Borrower to Guarantor ("Subordinated Debt") to any and all obligations of Borrower to Bank or its affiliates now or hereafter existing while this Guaranty is in effect, provided however that Guarantor may receive regularly scheduled principal and interest payments on the Subordinated Debt so long as (i) all sums due and payable by Borrower to Bank and its affiliates have been paid in full on or prior to such date, and (ii) no event or condition which constitutes or which with notice or the lapse or time would constitute an event of default with respect to the Guaranteed Obligations shall be continuing on or as of the payment date; (b) Guarantor will either place a legend indicating such subordination on every note, ledger page or other document evidencing any part of the Subordinated Debt or deliver such documents to Bank; and (c) except as permitted by this paragraph, Guarantor will not request or accept payment of or any security for any part of the Subordinated Debt, and any proceeds of the Subordinated Debt paid to Guarantor, through error or otherwise, shall immediately be forwarded to Bank by Guarantor, properly endorsed to the order of Bank, to apply to the Guaranteed Obligations.

**MISCELLANEOUS. Assignment.** This Guaranty and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Guaranty and other Loan Documents are freely assignable, in whole or in part, by Bank. Any assignment shall not release Guarantor from the Guaranteed Obligations. **Organization; Powers.** Guarantor (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity (as indicated below), duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty and any other Loan Document to which it is a party. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the state named in Bank's address shown above without regard to that state's conflict of laws principles. If the terms of this Guaranty should conflict with the terms of any commitment letter that survives closing, the terms of this Guaranty shall control. **Guarantor's Accounts.** Except as prohibited by law, Guarantor grants Bank and its affiliates a security interest in all of Guarantor's deposit accounts and investment properties maintained with Bank and its affiliates. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address shown above. **Severability.** If any provision of this Guaranty or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or other Loan Documents. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA9618, 1021 East Cary Street, Richmond, Virginia 23219 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change

of address to Bank by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Bank by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank or its affiliates of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank or its affiliates in exercising any right, power, or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively. **Partnerships.** If Guarantor is a partnership, the obligations, liabilities and agreements on the part of Guarantor shall remain in full force and effect and fully applicable notwithstanding any changes in the individuals comprising the partnership. The term "Guarantor" includes any altered or successive partnerships, and predecessor partnership(s) and the partners shall not be released from any obligations or liabilities hereunder. **Loan Documents.** The term "Loan Documents" refers to all documents executed in connection with or related to the Guaranteed Obligations and may include, without limitation, commitment letters that survive closing, loan agreements, other guaranty agreements, security agreements, instruments, financing statements, mortgages, deeds of trust, deeds to secure debt, letters of credit and any amendments or supplements (excluding swap agreements as defined in 11 U.S.C. § 101, as in effect from time to time). **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**FINANCIAL AND OTHER INFORMATION.** Guarantor shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Guarantor's financial condition. Such information shall be true, complete, and accurate.

**NEGATIVE COVENANTS.** Guarantor agrees that from the date hereof and until final payment in full of the Guaranteed Obligations, unless Bank shall otherwise consent in writing, Guarantor will not: **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Guarantor or any guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or

attachment against any property of or debts due Guarantor.  **Retire or Repurchase Capital Stock.** Retire or otherwise acquire any of its capital stock.

**PERSONAL FINANCIAL STATEMENTS.**  Each Guarantor who is an individual shall deliver to Bank annually, within thirteen months of the previous statement date on file with Bank, Guarantor's financial statement.  Said financial statement shall disclose all of Guarantor's assets, liabilities, net worth, income and contingent liabilities, all in reasonable detail and acceptable to Bank and submitted on a form to be provided by Bank or on such other form acceptable to Bank, signed by Guarantor and certified by Guarantor to Bank to be true, correct and complete.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS GUARANTY.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS GUARANTY.

**CONFESSION OF JUDGMENT.** Each Guarantor hereby constitutes and appoints John G. Fox, Thomas G. Cooper, Sr. (each of whom is an officer of Bank),  and Bank through an officer duly authorized by Bank (any of the foregoing may act), as the true and lawful attorneys-in-fact for them, in any or all of their names, place and stead, and upon the occurrence of a Default in the payment of the Guaranteed Obligations due under this Guaranty, at maturity, or upon acceleration, to confess judgment against them or any of them, in favor of Bank, before the Clerk of the Circuit Court for County of Henrico, Virginia, in accordance with 1950 Code of Virginia, Section 8.01-431 et seq., and any successor statute, for all amounts owed with respect to the Guaranteed Obligations under and pursuant to this Guaranty including, without limitation, all costs of collection and attorneys' fees in an amount equal to 15% of the Guaranteed Obligations then outstanding (which shall be deemed reasonable attorneys' fees for the purposes of this paragraph), and court costs, hereby ratifying and confirming the acts of said attorney-in-fact as if done by themselves.  Upon request of Bank, each Guarantor will execute an amendment or other agreement substituting attorneys-in-fact appointed to act for each Guarantor hereunder.

[Signature Page Follows]

**IN WITNESS WHEREOF**, Guarantor, on the day and year first written above, has caused this Unconditional Guaranty to be duly executed under seal.

_____Henry L. Wilton_____ (SEAL)
Henry L. Wilton

Commonwealth of Virginia
County of _Goochland_

### Individual Acknowledgment

I certify that Henry L. Wilton, a person(s) known to me, appeared before me this day, and being informed of the contents thereof, acknowledged execution of the foregoing instrument.

Witness my hand and official seal, this 31st day of _January_, _2007_.

Notary Seal

_____Catherine Waldrop_____, Notary Public
_____Catherine Waldrop_____
(Printed Name of Notary)

My Commission Expires: _11-30-10_

1385335v1