

# SECURITY AGREEMENT

June 21, 2007

Henry L. Wilton
4901 Dickens Road, Suite 101
Richmond, Virginia 23230
(Individually and collectively, "Debtor")

Wachovia Bank, National Association
1021 East Cary Street
Richmond, Virginia 23219
(Hereinafter referred to as "Bank")

For value received and to secure payment and performance of the Promissory Note executed by Third Avenue Developers, LLC, a Virginia limited liability company ("Borrower") dated of January 31, 2007, in the original principal amount of $2,200,000.00, as amended by that certain First Modification to Promissory Note and Unconditional Guaranty of even date herewith, whereby the maximum principal amount of Note was increased by $1,950,000.00 to $4,150,000.00, payable to Bank, and any extensions, renewals, modifications or novations thereof (the "Note"), this Security Agreement, the other Loan Documents, swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) executed in connection with or related to the Loan Documents, any present or future Letters of Credit issued by Bank for the account of Borrower, future advances, and all costs and expenses incurred by Bank to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest (collectively, "Obligations"), Debtor hereby grants to Bank a continuing security interest in and lien upon the following described property, whether now owned or hereafter acquired, and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof (collectively, "Collateral"):

All securities that are certificated and held in vault at Bank, described as follows: 125,000 shares of Class A common non voting membership shares, issued by The Wilton Companies, LLC., cusip number 59.

Debtor hereby represents and agrees that:

**OWNERSHIP.** Debtor owns the Collateral. The Collateral is free and clear of all liens, security interests, and claims except those previously reported in writing to and approved by Bank, and Debtor will keep the Collateral free and clear from all liens, security interests and claims, other than those granted to or approved by Bank. Debtor will not borrow on margin or other credit secured by the Account or property in the Account from any party other than Bank. All securities and security entitlements pledged as Collateral are fully paid and non-assessable and if certificated, have been delivered to Bank with unrestricted endorsements. All income, dividends, earnings and profits with respect to the Collateral shall be reported for state and federal income tax purposes as attributable to the Debtor and not Bank, and Bank or any other person authorized to report income distributions, is authorized to issue IRS Forms 1099 indicating Debtor as the recipient of such income, earnings and profits.

**NAME AND OFFICES; JURISDICTION OF ORGANIZATION.** The name and address of Debtor appearing at the beginning of this Agreement are Debtor's exact legal name and the address of its chief executive office. There has been no change in the name of Debtor, or the name under which Debtor conducts business, within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor has not moved its chief executive office within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor is organized under the laws of the Commonwealth of Virginia and has not changed the jurisdiction of its organization within the five years preceding the date hereof except as previously reported in writing to Bank.

**TITLE/TAXES.** Debtor has good and marketable title to the Collateral and will warrant and defend same against all claims. Debtor will not transfer, sell, or lease Collateral (except as permitted herein). Debtor agrees to pay promptly all taxes and assessments upon or for the use of Collateral and on this Security Agreement. At its option, Bank may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on Collateral. Debtor agrees to reimburse Bank, on demand, for any such payment made by Bank. Any amounts so paid shall be added to the Obligations.

**WAIVERS AND ACKNOWLEDGMENTS.** Debtor agrees not to assert against Bank as a defense (legal or equitable), as a set-off, as a counterclaim, or otherwise, any claims Debtor may have against any seller or lessor that provided personal property or services relating to any part of the Collateral or against any Borrower or any other party liable to Bank for all or any part of the Obligations. Debtor waives all exemptions and homestead rights with regard to the Collateral. Debtor waives any and all rights to any bond or security which might be required by applicable law prior to the exercise of any of Bank's remedies against any Collateral. All rights of Bank and security interests hereunder, and all obligations of Debtor hereunder, shall be absolute and unconditional, not discharged or impaired irrespective of (and regardless of whether Debtor receives any notice of): (i) any lack of validity or enforceability of any Loan Document; (ii) any change in the time, manner or place of payment or performance, or in any term, of all or any of the Obligations or the Loan Documents or any other amendment or waiver of or any consent to any departure from any Loan Document; or (iii) any exchange, insufficiency, unenforceability, enforcement, release, impairment or non-perfection of any collateral, or any release of or modifications to or insufficiency, unenforceability or enforcement of the obligations of any guarantor or other obligor. To the extent permitted by law, Debtor hereby waives any rights under any valuation, stay, appraisement, extension or redemption laws now existing or which may hereafter exist and which, but for this provision, might be applicable to any sale or disposition of the Collateral by Bank; and any other circumstance which might otherwise constitute a defense available to, or a discharge of any party with respect to the Obligations, including but not limited to the following:

Debtor **waives and releases the following rights, demands, and defenses** Debtor may have with respect to Bank and collection of the Obligations: (a) promptness and diligence in collection of any of the Obligations from the Borrower or any other person liable thereon, and in foreclosure of any other security interest and sale of any other property serving as collateral for the Obligations; (b) any law or statute that requires that Bank make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Debtor with respect to the Obligations, including any such rights Debtor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, as in effect from time to time, O.C.G.A. § 10-7-24, Mississippi Code Ann. Section 87-5-1 and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Debtor; (d) notice of extensions, modifications, renewals, or novations of the Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any guarantor; (e) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity or notice of acceleration of maturity; (f) any right to which Debtor is or may become entitled to be subrogated to Bank's rights against Debtor or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank against Borrower or any security which Bank now has or hereafter acquires, until such time as the Obligations have been fully satisfied beyond the expiration of any applicable preference period; (g) any claim or defense that acceleration of maturity of the Obligations is stayed against Debtor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (h) the right to marshalling of Debtor's assets or the benefit of any exemption claimed by Debtor. Debtor acknowledges and represents that Debtor has relied upon Debtor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Debtor will continue to be responsible for making its own independent appraisal of such matters; and Debtor has not relied upon Bank for information regarding Borrower or any collateral.

**FINANCIAL CONDITION.** Debtor warrants, represents and covenants to Bank that on and after the date hereof: (a) the fair saleable value of Debtor's assets exceeds its liabilities, Debtor is meeting its current liabilities as they mature, and Debtor is and shall remain solvent; (b) all financial statements of Debtor furnished to Bank are correct and accurately reflect the financial condition of Debtor as of the respective dates thereof; (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Debtor; (d) there are not now pending any court or administrative proceedings or undischarged judgments against Debtor, no federal or state tax liens have been filed or threatened against Debtor, and Debtor is not in default or claimed default under any agreement; and (e) at such reasonable times as Bank requests, Debtor will furnish Bank with such other financial information as Bank may reasonably request.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Security Agreement or other Loan Documents, if for any reason the effective interest on any of the Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Obligations. Monies received from any source by Bank for application toward payment of the Obligations may be applied to such Obligations in any manner or order deemed appropriate by Bank.

**NOTIFICATIONS; LOCATION OF COLLATERAL.** Debtor will notify Bank in writing at least 30 days prior to any change in: (i) Debtor's chief place of business and/or residence; (ii) Debtor's name or identity; (iii) Debtor's corporate/organizational structure; or (iv) the jurisdiction in which Debtor is organized. In addition, Debtor shall promptly notify Bank of any claims or alleged claims of any other person or entity to the Collateral or the institution of any litigation, arbitration, governmental investigation or administrative proceedings against or affecting the Collateral. Debtor will keep Collateral at the location(s) previously provided to Bank until such time as Bank provides written advance consent to a change of location. Debtor will bear the cost of preparing and filing any documents necessary to protect Bank's liens.

**FINANCING STATEMENTS, CERTIFICATES OF TITLE, POWER OF ATTORNEY.** No financing statement (other than any filed or approved by Bank) covering any Collateral is on file in any public filing office. Debtor authorizes the filing of one or more financing statements covering the Collateral in form satisfactory to Bank, and without Debtor's signature where authorized by law, agrees to deliver certificates of title on which Bank's lien has been indicated covering any Collateral subject to a certificate of title statute, and will pay all costs and expenses of filing or applying for the same or of filing this Security Agreement in all public filing offices, where filing is deemed by Bank to be desirable. Debtor hereby constitutes and appoints Bank the true and lawful attorney of Debtor with full power of substitution to take any and all appropriate action and to execute any and all documents, instruments or applications that may be necessary or desirable to accomplish the purpose and carry out the terms of this Security Agreement, including, without limitation, endorsements desirable for transfer or delivery of any Collateral, registration of any Collateral under applicable laws, retitling any Collateral, receipt, endorsement and/or collection of all checks and other orders for payment of money payable to Debtor with respect to Collateral. The foregoing power of attorney is coupled with an interest and shall be irrevocable until all of the Obligations have been paid in full. Neither Bank nor anyone acting on its behalf shall be liable for acts, omissions, errors in judgment, or mistakes in fact in such capacity as attorney-in-fact. Debtor ratifies all acts of Bank as attorney-in-fact. Debtor agrees to take such other actions, at Debtor's expense, as might be requested for the perfection, continuation and assignment, in whole or in part, of the security interests granted herein and to assure and preserve Bank's intended priority position. If certificates, passbooks, or other documentation or evidence is/are issued or outstanding as to any of the Collateral, Debtor will cause the security interests of Bank to be properly protected, including perfection by notation thereon or delivery thereof to Bank. Upon Bank's request, Debtor will, at its own expense: (i) do all things determined by Bank to be desirable to register such Collateral or qualify for an exemption from registration, under the provisions of all applicable securities laws, and (ii) otherwise do or cause to be done all other acts and things as may be necessary to make the sale of the Collateral valid, binding and in compliance with applicable law.

**STOCK, DIVIDENDS.** If, with respect to any securities pledged hereunder, a stock dividend is declared, any stock split made or right to subscribe is issued, all the certificates for the shares representing such stock dividend, stock split or right to subscribe will be immediately delivered, duly endorsed, to the Bank as additional Collateral, and any cash or non-cash proceeds and products thereof, including investment property and security entitlements will be immediately delivered to Bank. Debtor acknowledges that such grant includes all investment property and security entitlements, now existing or hereafter arising, relating to such securities. In addition, Debtor agrees to execute such notices and instructions to securities intermediaries as Bank may reasonably request.

**VALUE REQUIREMENT.** The aggregate Fair Market Value of the Collateral shall at all times exceed $1,700,000.00. If at any time this amount is not exceeded, Debtor shall, within 3 business days, deliver additional Collateral to Bank such that the aggregate Fair Market Value of the Collateral, as of the close of business on the day of such delivery, shall exceed this amount. The Bank shall be under no obligation to permit advances during any period when value requirements are not satisfied (or, should an advance be permitted, would not then be satisfied).

Only the following Collateral shall be considered eligible for purposes of determining Debtor's satisfaction of this value requirement: cash in the Account, US Government Obligations, Corporate Bonds, Municipal Bonds, Commercial Paper, Mutual Funds, Unit Investment Trusts, Mortgage Backed Securities, Equities, Wachovia Deposits directly pledged as Collateral hereunder or as collateral by separate agreement, if any, and 95% of other acceptable deposits pledged as collateral by separate agreement, if any. All other Collateral as may exist from time to time shall be of no value for purposes of this provision.

Such of the Collateral as is necessary to satisfy any other value requirement imposed by Bank shall not be eligible to satisfy value requirements herein. When applicable to the Obligations, credit limits of Regulation U of the Federal Reserve Board (12 U.S.C. § 221) shall be satisfied by Debtor as prescribed thereby. Until Default occurs, Collateral in excess of the amount required hereunder is available for release to Debtor free and clear of the terms of this Agreement at Debtor's discretion. Bank shall be afforded such reasonable time, information and cooperation as may be necessary to accommodate Debtor requests for withdrawal of excess Collateral.

"Commercial Paper" means fixed rate debt instruments of domestic corporations rated A2 or higher by Standard & Poor's and Prime 2 or higher by Moody's. Floating rate commercial paper and commercial paper of other than US corporations are not included in the term in this context.

"Corporate Bonds" means bonds of domestic corporations which are not convertible to equity and which are rated BBB- or higher by Standard & Poor's and Baa3 or higher by Moody's. Convertible bonds and bonds of other than US corporations are not included in the term in this context. Short-term corporate bonds are those maturing 2 years or less after date of issue; all others are longer term.

"Equities" means stock, other than restricted or control stock, of domestic corporations, American Depository Receipts (ADR's), Exchange Traded Funds (ETF's) and Real Estate Investment Trusts (REIT's) which, as to all of the foregoing, have a value greater than or equal to $10.00 per share and trade on the NYSE, AMEX or NASDAQ National Market System and have done so for at least 30 days after IPO initial settlement. Equity securities of value less than $10.00 per share, newly issued, trading on the OTC, Pink Sheets or regional exchanges only, unregistered, unlisted or de-listed, or closely held, and put or call options, rights or warrants, managed futures, stand-alone ADR's, restricted and control securities, and exchange funds, hedge funds, and other private equity or investment groups are not included in the term in this context.

"Fair Market Value" or "FMV" means the per share or per unit closing sale price quoted or reported at the close of the preceding business day, as to any Collateral that is uncertificated, in the Account, and, as to any Collateral that is certificated, in the <u>Wall Street Journal</u> (or, if not available, such other customary publication of securities closing sale prices Bank may elect to reference) multiplied by the number of

shares or units of like Collateral. The aggregate Fair Market Value of the Collateral is the total of all such Fair Market Values so determined plus the amount of cash Collateral. If Fair Market Value cannot be determined by the foregoing procedure, then Fair Market Value shall be determined by the Bank by reference to such public information and procedures as may otherwise then be available. All cash and other value references are to currency denominated in dollars of the United States of America.

"Mortgage Backed Securities" means GNMA, FNMA and FHLMC Pass-through Certificates. Collateralized mortgage obligations (CMO's) paying interest only, principal only, or having inverse floating rates, and wholesale mortgage backed securities are not included in the term in this context.

"Municipal Bonds" means bonds of state, city, county, municipality and other public entities rated BBB- or higher by Standard & Poor's and Baa3 or higher by Moody's. Short-term municipal bonds are those maturing 5 years or less after date of issue; all others are longer term.

"Mutual Funds" means investment companies regulated under the Investment Company Act of 1940, except those regulated under Sections 4 and 26, that invest primarily in money markets securities (Money Market Mutual Fund), bonds (US Government, Municipal and Corporate Bond Mutual Funds), equities (Large Cap, Mid Cap and Small Cap Mutual Funds) or invest by designs for balanced or allocated portfolios of securities (Balanced or Asset Allocation Mutual Funds). Non-networked, offshore, and international mutual funds, and face-amount certificate and management companies are not included in the term in this context.

"Unit Investment Trusts" (UIT) means investment companies regulated primarily under Sections 4 and 26 of the Investment Company Act of 1940 that invested primarily in municipal securities or those invested primarily in securities of domestic corporations if the unit value therein is greater than or equal to $2.00.

"US Government Obligations" means US Treasury Bills, US Treasury Bonds and Notes, and US Government Zero Coupon Bonds. US Savings Bonds are not included in the term in this context. Short-term US Government Obligations are those maturing 2 years or less after date of issue; all others are longer term.

"Wachovia Deposits" means acceptable certificates of deposit, money market and demand deposits accounts of Wachovia Bank, National Association, directly pledged as collateral for the Obligations. Wachovia CAP Accounts, 7-day CD's, callable CD's, and uninsured deposits of any kind are not included in the term in this context. FDIC-insured certificates of deposit, money market or demand deposit accounts of any other financial institution will not be treated as Wachovia Deposits but may be acceptable as Collateral for the Obligations at Bank's sole discretion.

**NO TRADING OF COLLATERAL.** Until a Default occurs, Debtor shall have the right to vote the securities pledged hereunder and to collect and receive all cash dividends and interest distributed periodically in the ordinary course by the obligor or issuer of such Collateral or part thereof; provided, however, Debtor may not sell, transfer, exchange for other property or cash ("Trade") or otherwise exercise rights with respect to such Collateral or receive any distributions or proceeds from Trades of such Collateral without the prior written consent of Bank, and any such distributions or proceeds received by Debtor shall be held in trust for, and immediately delivered to, Bank. Any consent pursuant to this paragraph shall be in Bank's sole discretion.

**COLLATERAL DUTIES.** Bank shall have no custodial or ministerial duties to perform with respect to Collateral pledged except as set forth herein; and by way of explanation and not by way of limitation, Bank shall incur no liability for any of the following: (i) loss or depreciation of Collateral (unless caused by its willful misconduct or gross negligence), (ii) failure to present any paper for payment or protest, to protest or give notice of nonpayment, or any other notice with respect to any paper or Collateral, (iii) failure to ascertain, notify Debtor of, or take any action in connection with any conversion, call, redemption, retirement or any other event relating to any of the Collateral, or failure to notify any party hereto that Collateral should be presented or surrendered for any such reason. Debtor acknowledges

that Bank is not an investment advisor or insurer with respect to the Collateral; and Bank has no duty to advise Debtor of any actual or anticipated changes in the value of the Collateral.

**TRANSFER OF COLLATERAL.** Bank may assign its rights in Collateral or any part thereof to any assignee who shall thereupon become vested with all the powers and rights herein given to Bank with respect to the property so transferred and delivered, and Bank shall thereafter be forever relieved and fully discharged from any liability with respect to such property so transferred, but with respect to any property not so transferred, Bank shall retain all rights and powers hereby given.

**INSPECTION, BOOKS AND RECORDS.** Debtor will at all times keep accurate and complete records covering each item of Collateral, including the proceeds therefrom. Bank, or any of its agents, shall have the right, at intervals to be determined by Bank and without hindrance or delay, at Debtor's expense, to inspect, audit, and examine the Collateral during normal business hours and to make copies of and extracts from the books, records, journals, orders, receipts, correspondence and other data relating to Collateral, Debtor's business or any other transaction between the parties hereto. Debtor will at its expense furnish Bank copies thereof upon request. For the further security of Bank, it is agreed that Bank has and is hereby granted a security interest in all books and records of Debtor pertaining to the Collateral.

**COMPLIANCE WITH LAW.** Debtor will comply with all federal, state and local laws and regulations, applicable to it, including without limitation, laws and regulations relating to the environment, labor or economic sanctions, in the creation, use, operation, manufacture and storage of the Collateral and the conduct of its business.

**REGULATION U.** None of the proceeds of the credit secured hereby shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of any of the provisions of Regulation U of the Board of Governors of the Federal Reserve System ("Regulation U"), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry margin stock or for any other purchase which might render the Loan a "Purpose Credit" within the meaning of Regulation U.

**CROSS COLLATERALIZATION LIMITATION.** As to any other existing or future consumer purpose loan made by Bank to Debtor, within the meaning of the Federal Consumer Credit Protection Act, Bank expressly waives any security interest granted herein in Collateral that Debtor uses as a principal dwelling and household goods.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Debtor shall pay all of Bank's reasonable expenses actually incurred in enforcing this Security Agreement and in preserving and liquidating Collateral, including but not limited to, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred with or without the commencement of a suit, trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Security Agreement shall exist: **Loan Document Default.** A default under any Loan Document or a default under any of the loan documents executed by Debtor and/or Wilton Development of Steamboat, LLC, a Virginia limited liability company ("WDS"), an LLC in which Debtor is a principal, in connection with a certain acquisition and development loan made by Bank to WDS in the original principal amount of $7,514,000.00. **Collateral Loss or Destruction.** Any loss, theft, substantial damage, or destruction of Collateral not fully covered by insurance, or as to which insurance proceeds are not remitted to Bank within 30 days of the loss. **Collateral Sale, Lease or Encumbrance.** Any sale, lease, or encumbrance of any Collateral not specifically permitted herein without prior written consent of Bank. **Levy, Seizure or Attachment.** The making of any levy, seizure, or attachment on or of Collateral which is not removed within 10 days. **Cessation; Bankruptcy.** The death of, appointment of guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Debtor, its Subsidiaries or Affiliates if any, or any general partner of or the holder(s) of the majority ownership

interests in Debtor or any party to the Loan Documents ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time; and "Subsidiary" shall mean any business in which Debtor holds, directly or indirectly, a controlling interest). **Unauthorized Termination.** Any attempt to terminate, revoke, rescind, modify, or violate the terms of this Security Agreement without the prior written consent of Bank. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or a material adverse change has occurred in the business or prospects of Debtor or Borrower or any guarantor, financial or otherwise.

**REMEDIES ON DEFAULT (INCLUDING POWER OF SALE).** If a Default occurs Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code. Without limitation thereto, Bank shall have the following rights and remedies: (i) to take immediate possession of Collateral, without notice or resort to legal process, and for such purpose, to enter upon any premises on which Collateral or any part thereof may be situated and to remove the same therefrom, or, at its option, to render Collateral unusable or dispose of said Collateral on Debtor's premises; (ii) to require Debtor to assemble the Collateral and make it available to Bank at a place to be designated by Bank; (iii) to exercise its or its affiliate's right of set-off or Bank lien as to any monies of Debtor deposited in deposit accounts and investment accounts of any nature maintained by Debtor with Bank or affiliates of Bank, without advance notice, regardless of whether such accounts are general or special; (iv) to dispose of Collateral, as a unit or in parcels, separately or with any real property interests also securing the Obligations, in any county or place to be selected by Bank, at either private or public sale (at which public sale Bank may be the purchaser) with or without having the Collateral physically present at said sale. In addition to the foregoing, Bank shall be authorized to: transfer into Bank's name or the name of its nominee, all or any part of the Collateral; receive all interest, dividends, and other proceeds of the Collateral; notify any person obligated on any Collateral of the security interest of Bank therein and require such person to make payment directly to Bank; demand, sue for, collect or receive the Collateral and any proceeds thereof, and/or make any settlement or compromise as Bank deems desirable with respect to any Collateral; and exercise any voting, conversion, registration, purchase or other rights of an owner, holder or entitlement holder of the Collateral. Debtor agrees that Bank may exercise its rights under this Security Agreement without regard for the actual or potential tax consequences to Debtor under federal or state law and without regard to any instructions or directives given Bank by Debtor.

Any notice of sale, disposition or other action by Bank required by law and sent to Debtor at Debtor's address shown above, or at such other address of Debtor as may from time to time be shown on the records of Bank, at least 5 days prior to such action, shall constitute reasonable notice to Debtor. Notice shall be deemed given or sent when mailed postage prepaid to Debtor's address as provided herein. Bank shall be entitled to apply the proceeds of any sale or other disposition of the Collateral, and the payments received by Bank with respect to any of the Collateral, to Obligations in such order and manner as Bank may determine. Collateral that is subject to rapid declines in value and is customarily sold in recognized markets may be disposed of by Bank in a recognized market for such collateral without providing notice of sale. Debtor waives any and all requirements that the Bank sell or dispose of all or any part of the Collateral at any particular time, regardless of whether Debtor has requested such sale or disposition.

**REMEDIES ARE CUMULATIVE.** No failure on the part of Bank to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Bank or any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any right, power or remedy. The remedies herein provided are cumulative and are not exclusive of any remedies provided by law, in equity, or in other Loan Documents.

**INDEMNIFICATION.** Debtor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Debtor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents, (ii) the Collateral or any claim of loss or damage to the Collateral or any injury or claim of injury to, or death of, any person or property that may be

occasioned by any cause whatsoever pertaining to the Collateral or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Debtor to comply with any law, rule or regulation applicable to it or to the Collateral or the use, occupancy or operation of the Collateral (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, or (v) any claim for brokerage fees or such other commissions relating to the Collateral or any other Obligations; provided that such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Debtor (other than self-insurance) with respect to such Damages. Nothing contained herein shall require Debtor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful misconduct. The indemnity provided for herein shall survive payment of the Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank. In the event Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

**MISCELLANEOUS.** (i) **Amendments and Waivers.** No waiver, amendment or modification of any provision of this Security Agreement shall be valid unless in writing and signed by Debtor and an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or of the same Default on a future occasion. (ii) **Assignment.** All rights of Bank hereunder are freely assignable, in whole or in part, and shall inure to the benefit of and be enforceable by Bank, its successors, assigns and affiliates. Debtor shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Debtor to assign without Bank's prior written consent is null and void. Any assignment shall not release Debtor from the Obligations. This Security Agreement shall be binding upon Debtor, and the heirs, personal representatives, successors, and assigns of Debtor. (iii) **Organization; Powers.** Debtor represents that Debtor (a) is (1) an adult individual and is sui juris, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization; (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Agreement and any other Loan Document to which it is a party. (iv) **Applicable Law; Conflict Between Documents.** This Security Agreement shall be governed by and construed under the law of the jurisdiction named in the address of the Bank shown on the first page hereof without regard to that Jurisdiction's conflict of laws principles, except to the extent that the UCC requires the application of the law of a different jurisdiction. If any terms of this Security Agreement conflict with the terms of any commitment letter or loan proposal, the terms of this Security Agreement shall control. (v) **Jurisdiction.** Debtor irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. (vi) **Severability.** If any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Agreement. (vii) **Notices.** Any notices to Debtor shall be sufficiently given, if in writing and mailed or delivered to the address of Debtor shown above or such other address as provided hereunder; and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA9618, 1021 East Cary Street, Richmond, Virginia 23219 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Debtor changes Debtor's mailing address at any time prior to the date the Obligations are paid in full, Debtor agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. (viii) **Captions.** The captions contained herein are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provision hereof. The use of the plural shall also mean the singular, and vice versa. (ix) **Joint and Several Liability.** If more than one party has signed this Security Agreement, such parties are jointly and severally obligated hereunder. (x) **Binding Contract.** Debtor by execution and Bank by acceptance of

this Security Agreement, agree that each party is bound by all terms and provisions of this Security Agreement. (xi) **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. (xii) **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**DEFINITIONS. Loan Documents.** The term "Loan Documents" refers to all documents, including this Agreement, whether now or hereafter existing, executed in connection with or related to the Obligations, and may include, without limitation and whether executed by Debtor or others, commitment letters that survive closing, loan agreements, promissory notes, guaranty agreements, deposit or other similar agreements, other security agreements, letters of credit and applications for letters of credit, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **UCC.** "UCC" means the Uniform Commercial Code as presently and hereafter enacted in the Jurisdiction. **Terms defined in the UCC.** Any term used in this Agreement and in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or any other Loan Document has the meaning given to the term in the UCC.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF DEBTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SECURITY AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS SECURITY AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS SECURITY AGREEMENT. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS SECURITY AGREEMENT.

[SIGNATURE PAGE FOLLOWS]

1442267v1

535096 (Rev 23.0)

**IN WITNESS WHEREOF**, Debtor, on the day and year first written above, has caused this Security Agreement to be duly executed under seal.

_____/s/ Henry Wilton_____ (SEAL)
Henry L. Wilton

Secagr.doc
FUNBATTY 2/9/2007

# Exhibit A to UCC

Exhibit A to UCC from The Wilton Companies ("Debtor") and for the benefit of Wachovia Bank, National Association ("Secured Party").

The following described property whether now owned or hereafter acquired, and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof.

Description of Collateral:

All securities that are certificated and held in vault at Bank, described as follows: 125,000 shares of Class A common non voting membership shares, issued by The Wilton Companies, LLC., cusip number 59.

Any term which is defined in the Uniform Commercial Code (UCC) has the meaning given to the term in the UCC.