## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| **HENRY L. WILTON** | ) | **Chapter 11** |
| | ) | **Case No.: 10-36398-KRH** |
| Debtor. | ) | |
| | ) | |

| | |
|---|---|
| | ) |
| **FIRST CAPITAL BANK,** | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| **HENRY L. WILTON,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

## CONSENT MOTION FOR RELIEF FROM AUTOMATIC STAY AND MEMORANDUM IN SUPPORT AND NOTICE THEREOF

### NOTICE

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

**If you do not wish the Court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within fourteen (14) days from the date of service of this motion, you must file a written response explaining your position with the court and serve a copy on the plaintiff. Unless a written response is filed and served within this fourteen day period, the Court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing.**

Christopher L. Perkins (VSB No. 41783)
Christian K. Vogel (VSB No. 75537)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 783-7550
Facsimile: (804) 783-7686

Counsel for First Capital Bank

**If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the expiration of the fourteen day period.**

**You will be notified separately of the hearing date on the motion**.

## MOTION

First Capital Bank, by counsel, submits this Consent Motion for Relief from the Automatic Stay and Notice Thereof (the "Motion"), and, in support thereof, respectfully states as follows:

### Jurisdiction and Venue

1.     This Motion is filed pursuant to 11 U.S.C. §§ 362 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

2.     Jurisdiction to consider this matter is vested in this Court pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Facts

3.     Henry L. Wilton (the "Debtor") filed his petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on September 16, 2010 (the "Petition Date").

4.     The Debtor remains in possession of his property.

5.     The Bank is a banking organization duly organized and validly licensed to engage in the banking business pursuant to the laws of the Commonwealth of Virginia.

6.     The Debtor is indebted to the Bank pursuant to the terms of a promissory note (the "November Note") dated November 2, 2007, in the original principal amount of $3,500,000.00, attached hereto as Exhibit A.

7.     To secure its indebtedness under the November Note, the Debtor granted the Bank a security interest in 3049.9984 shares of The Wilton Companies, Inc. stock (the "Stock") together

with all of the Debtor's property in the possession of the Bank (or in the possession of a third party subject to the control of the Bank), pursuant to a Commercial Pledge Agreement by and between the Debtor and the Bank, dated November 2, 2007 (the "Commercial Pledge Agreement"), attached hereto as Exhibit B.

8.     The Bank's security interest in the Stock was perfected by the Bank taking possession of the certificates evidencing the Stock.

9.     On or about February 4, 2009, the Debtor executed a promissory note (the "February Note") in favor of the Bank, in which Wilton promised to pay the Bank the principal amount of $3,335,769.82, attached hereto as Exhibit C.

10.    The February Note superseded the November Note.

11.    The Debtor subsequently defaulted under the February Note due to, among other things, failure to make payments under the February Note when due.

12.    The Bank sued Debtor in the Circuit Court of Henrico on June 25, 2010 for breach of the February Note.

13.    The Debtor subsequently petitioned the Court for relief on September 16, 2010.

14.    As of the Petition Date, the approximate unpaid principal balance owed to the Bank under the February Note was $3,335,769.82, including interest of $204,135.08, and late charges of $12,192.93, and excluding attorney's fees.

## Relief Requested

15.    The amount of debt owed to the Bank far exceeds the value of the Stock. Therefore, there is no equity in the Stock and the Stock is not necessary to an effective reorganization of the Debtor. *See* 11 U.S.C. § 362(d)(2) (providing that the Court shall grant relief from the automatic

stay if "the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization.").

16.     Further, cause exists to grant the Bank relief from the automatic stay because the Bank is not adequately protected.

17.     Pursuant to Bankruptcy Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, the Bank requests that this Court suspend the fourteen (14) day stay of enforcement of the Order granting relief from the stay.

WHEREFORE First Capital Bank, respectfully requests that this Court enter the Order attached as Exhibit D terminating the automatic stay of 11 U.S.C. § 362(a) as to 3049.9984 shares of The Wilton Companies, Inc. stock together with all of Debtor's property in possession of the Bank (or in the possession of a third party subject to the control of the Bank), and granting such other and further relief as the Court deems just and proper.

Dated: March 15, 2011                         FIRST CAPITAL BANK


                                              /s/ Christopher L. Perkins

Christopher L. Perkins (VSB No. 41783)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone:  (804) 783-7550
Facsimile:  (804) 783-7686

Counsel for First Capital Bank

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March 2011, I did mail a copy of the foregoing upon each party on the attached service list required to receive notice under Local Bankruptcy Rule 4001(a)-1(E)(1), and by first class postage pre-paid or by electronic communication to the following:

Mr. Henry L. Wilton
12671 River Road
Henrico, Virginia 23238
*Debtor*

W. Clarkson McDow, Jr.
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia 23219
*U.S. Trustee*

Robert A. Canfield, Esquire
Canfield, Baer, & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
*Counsel to Debtor*

Lynn Tavenner, Esquire
Tavenner & Beran
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
*Counsel to Debtor*

/s/ Christopher L. Perkins

# <u>SERVICE LIST</u>

Bank of America
P.O. Box 15026
Wilmington, DE  19850-5026

E. C. Wilton
11201 Patterson Avenue
Henrico, VA  23238

First Capital Bank
4222 Cox Road, Suite 200
Glen Allen, VA  23060

Franklin Federal Savings Bank
4501 Cox Road
Glen Allen, VA  23060

Gateway Bank
Hampton Roads Bankshares
112 Corporate Drive
Elizabeth City, NC  27909

Hampton Roads Bankshares
12090 W. Broad Street
Henrico, VA  23233

L.A. & Karen Dougherty
100 Hale Hookipa Way
Wailea, HI  96753

Regions Bank
P.O. Box 11407
Birmingham, AL  35246

Union First Market Bank
9665 Sliding Hill Road
Ashland, VA  23005

Village Bank
15521 Midlothian Turnpike, Suite 200
Midlothian, VA  23113

Wachovia
P.O. Box 15019
Wilmington, DE  19886

Wachovia Bank Card Services
P.O. Box 740502
Atlanta, GA  30374

Wachovia Bank N.A.
PA1327
123 South Broad Street
Philadelphia, PA  19109

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 11-02-2007 | 11-05-2012 | 8008's027 | | | BRAD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Henry L. Wilton (SSN: 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)
4901 Dickens Road, Suite 101
Richmond, VA 23230

**Lender:** First Capital Bank
Corporate Offices
4222 Cox Road
Suite 200
Glen Allen, VA 23060

---

**Principal Amount: $3,500,000.00**      **Interest Rate: 7.250%**      **Date of Note: November 2, 2007**

**PROMISE TO PAY.** Henry L. Wilton ("Borrower") promises to pay to First Capital Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Five Hundred Thousand & 00/100 Dollars ($3,500,000.00), together with interest at the rate of 7.250% per annum on the unpaid principal balance from November 5, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $32,158.03 each and one irregular last payment estimated at $2,759,078.82. Borrower's first payment is due December 5, 2007, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 5, 2012, and will be for all principal, accrued interest, and all other applicable fees, costs and charges, if any, not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Capital Bank, Attn: Loan Payment Processing, 4101 Dominion Blvd. Glen Allen, VA 23060.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall be increased to 18.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Insufficient Market Value of Securities.** Failure to satisfy Lender's requirement set forth in the Insufficient Market Value of Securities section of the Pledge Agreement.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees equal

to 25.000% of the principal balance due on the loan and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings.

**HOMESTEAD WAIVER.** Borrower, to the extent permitted by law, hereby waives Borrower's homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $22.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: securities or investment property described in a Commercial Pledge Agreement dated November 2, 2007.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Capital Bank Attn: Loan Servicing Dept. 4222 Cox Rd., Ste. 200 Glen Allen, VA 23060.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
Henry L. Wilton

# EXHIBIT B

# COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,500,000.00 | 11-02-2007 | 11-05-2012 | 980285027 | | | BRAD | CH |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Henry L. Wilton (SSN: 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)
4901 Dickens Road, Suite 101
Richmond, VA 23230

**Lender:** First Capital Bank
Corporate Offices
4222 Cox Road
Suite 200
Glen Allen, VA 23060

---

THIS COMMERCIAL PLEDGE AGREEMENT dated November 2, 2007, is made and executed between Henry L. Wilton ("Grantor") and First Capital Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means all of Grantor's property (however owned if more than one), in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

459.46 Shares of The Wilton Companies, Inc. Stock Certificate #18 Stock

918.92 Shares of The Wilton Companies, Inc. Stock Certificate #23 Stock

1,671.61840 Shares of The Wilton Companies, Inc. Stock Certificate #26C Stock

In addition, the word "Collateral" includes all of Grantor's property (however owned), in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether now or hereafter existing and whether tangible or intangible in character, including without limitation each of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of a writing, microfilm, microfiche, or electronic media.

(E) All income and Proceeds from the Collateral as defined herein.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Authority; Binding Effect.** Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

**No Further Assignment.** Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to

execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** Lender may hold the Collateral until all Indebtedness has been paid and satisfied. Thereafter Lender may deliver the Collateral to Grantor or to any other owner of the Collateral. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. If the Collateral consists of stock, bonds or other investment property for which no certificate has been issued, Grantor agrees, at Lender's request, either to request issuance of an appropriate certificate or to give instructions on Lender's forms to the issuer, transfer agent, mutual fund company, or broker, as the case may be, to record on its books or records Lender's security interest in the Collateral. Grantor also agrees to execute any additional documents, including but not limited to, a control agreement, necessary to perfect Lender's security interest as Lender may desire.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, or (3) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the Income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the Income and Proceeds, to pay and deliver to Lender all Income and Proceeds from the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. If any of the Collateral consists of securities for which no certificate has been issued, Grantor agrees, at Lender's option, either to request issuance of an appropriate certificate or to execute appropriate instructions on Lender's forms instructing the issuer, transfer agent, mutual fund company, or broker, as the case may be, to record on its books or records, by book-entry or otherwise, Lender's security interest in the Collateral. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no

liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of any Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Insufficient Market Value of Securities.** Stock: The market value of the Collateral falls below $3,500,000.00; Stock: The market value of the Collateral falls below $3,500,000.00 or Stock: The market value of the Collateral falls below $3,500,000.00; and as a result of the deterioration of the market value of the Collateral, Grantor does not, by the close of business on the next business day after Grantor has received notice from Lender of the deterioration, either (1) reduce the amount of the Indebtedness in this loan as required by Lender or (2) pledge or grant an additional security interest to increase the value of the Collateral as required by Lender.

**Events Affecting Gu___ ___r.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Inde___ ___or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liabili___, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in goo___ ___h believes itself insecure.

**RIGHTS AN___ ___ ___ULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more ___s and remedies:

**Accelerat___ ___s.** Declare all Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and p___. ___on notice of any kind to Grantor.

**Collect the ___teral.** ___ct any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral whil___ ___ ___n the Indebtedness.

**Sell the C___ ___teral.** ___ Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Coll___ ___ ___ ___aters to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail ___ ___s as required by law, notice at least ten (10) days in advance of the time and place of any public sale, or of the ___le sale may be made. However, no notice need be provided to any person who, after an Event of Default occurs, ___ ___cates an agreement waiving that person's right to notification of sale. Grantor agrees that any requirement of reasonable ___e as to ___tor is satisfied if Lender mails notice by ordinary mail addressed to Grantor at the last address Grantor has given Lender in writing. If ___ublic sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspape___ of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws. If, because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered. Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction. Such a sale will be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Rights and Remedies with Respect to Investment Property, Financial Assets and Related Collateral.** In addition to other rights and remedies granted under this Agreement and under applicable law, Lender may exercise any or all of the following rights and remedies: (1) register with any issuer or broker or other securities intermediary any of the Collateral consisting of investment property or financial assets (collectively herein, "investment property") in Lender's sole name or in the name of Lender's broker, agent or nominee; (2) cause any Collateral consisting of investment property to deliver to Lender any of the Collateral consisting of securities, or investment property capable of being delivered; (3) enter into a control agreement or power of attorney with any issuer or securities intermediary with respect to any Collateral consisting of investment property, on such terms as Lender may deem appropriate, in its sole discretion, including without limitation, an agreement granting to Lender any of the rights provided hereunder without further notice to or consent by Grantor; (4) execute any such control agreement on Grantor's behalf and in Grantor's name, and hereby irrevocably appoints Lender as agent and attorney-in-fact, coupled with an interest, for the purpose of executing such control agreement on Grantor's behalf; (5) exercise any and

all rights of Lender under any such control agreement or power of attorney; (6) exercise any voting, conversion, registration, purchase, option, or other rights with respect to any Collateral; (7) collect, with or without legal action, and issue receipts concerning any notes, checks, drafts, remittances or distributions that are paid or payable with respect to any Collateral consisting of investment property. Any control agreement entered with respect to any investment property shall contain the following provisions, at Lender's discretion. Lender shall be authorized to instruct the issuer, broker or other securities intermediary to take or to refrain from taking such actions with respect to the investment property as Lender may instruct, without further notice to or consent by Grantor. Such actions may include without limitation the issuance of entitlement orders, account instructions, general trading or buy or sell orders, transfer and redemption orders, and stop loss orders. Lender shall be further entitled to instruct the issuer, broker or securities intermediary to sell or to liquidate any investment property, or to pay the cash surrender or account termination value with respect to any and all investment property, and to deliver all such payments and liquidation proceeds to Lender. Any such control agreement shall contain such authorizations as are necessary to place Lender in "control" of such investment collateral, as contemplated under the provisions of the Uniform Commercial Code, and shall fully authorize Lender to issue "entitlement orders" concerning the transfer, redemption, liquidation or disposition of investment collateral, in conformance with the provisions of the Uniform Commercial Code.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Grantor to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Grantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Grantor agrees that if Lender hires an attorney to help enforce this Agreement, Grantor will pay, subject to any limits under applicable law, Lender's attorneys' fees equal to 25.000% of the principal balance due on the Indebtedness and all of Lender's other collection expenses, whether or not there is a lawsuit and including without limitation additional legal expenses for bankruptcy proceedings.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the Commonwealth of Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized

overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means Henry L. Wilton and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Henry L. Wilton.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means First Capital Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by Henry L. Wilton in the principal amount of $3,500,000.00 dated November 2, 2007, together with all modifications of and renewals, replacements, and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL PLEDGE AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 2, 2007.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Henry L. Wilton

LASER PRO Lending, Ver. 5.18.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - VA N CFI\LPL\E40.FC TR-3749 PR-83

# EXHIBIT C

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|----------|-------------|---------|---------|----------|
| $3,335,769.82 | 02-04-2009 | 07-05-2011 | 980285027 | CIUS | | BRAD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Henry L. Wilton (SSN: 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)
4901 Dickens Road, Suite 101
Richmond, VA 23230

**Lender:** First Capital Bank
Corporate Offices
4222 Cox Road
Suite 200
Glen Allen, VA 23060

---

**Principal Amount: $3,335,769.82**                                   **Date of Note: February 4, 2009**

**PROMISE TO PAY.** Henry L. Wilton ("Borrower") promises to pay to First Capital Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Three Hundred Thirty-five Thousand Seven Hundred Sixty-nine & 82/100 Dollars ($3,335,769.82), together with interest on the unpaid principal balance from February 4, 2009, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 2 monthly consecutive interest payments, beginning March 5, 2009, with interest calculated on the unpaid principal balances using an interest rate of 7.250%; and 9 quarterly consecutive interest payments, beginning July 5, 2009, with interest calculated on the unpaid principal balances using an interest rate of 7.250%. Borrower's final payment of $3,356,595.22 will be due on July 5, 2011. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Capital Bank, Loan Payment Processing, 11001 W. Broad Street Glen Allen, VA 23060.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall be increased to 18.000%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's attorneys' fees equal to 25.000% of the principal balance due on the loan and all of Lender's other collection expenses, whether or not there is a lawsuit, including

without limitation legal expenses for bankruptcy proceedings.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the Commonwealth of Virginia.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $22.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Collateral securing other loans with Lender may also secure this loan. To the extent collateral previously has been given to Lender by any person which may secure this loan, whether directly or indirectly, it is specifically agreed that, to the extent prohibited by law, all such collateral consisting of household goods will not secure this loan. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this loan, such collateral also will not secure this loan unless and until all required notices of that right have been given.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Capital Bank Loan Operations Department 4222 Cox Rd., Ste. 200 Glen Allen, VA 23060.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)
Henry L. Wilton

**EXHIBIT D**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| IN RE: | ) | |
| **HENRY L. WILTON** | ) | **Chapter 11** |
| | ) | **Case No.: 10-36398-KRH** |
| Debtor. | ) | |

---

| | |
|---|---|
| **FIRST CAPITAL BANK,** | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| **HENRY L. WILTON,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

## <u>CONSENT ORDER GRANTING RELIEF FROM AUTOMATIC STAY</u>

Upon consideration of the Consent Motion for Relief from the Automatic Stay (the "motion") filed by First Capital Bank, it is ORDERED as follows:

1.      The automatic stay of Section 362(a) of the Bankruptcy Code is hereby terminated immediately, automatically, and without further motion, notice or order of this or any other Court, to permit the Bank to exercise any of its available rights with respect to 3049.9984 shares of The Wilton Companies, Inc stock.

2.      This Order shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Rule 4001(a)(3).

_____
Christopher L. Perkins (VSB No. 41783)
Christian K. Vogel (VSB No. 75537)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone:  (804) 783-7550
Facsimile:  (804) 783-7686

Counsel for First Capital Bank

3.       The terms and conditions of this Order shall survive the entry of any order that may be entered hereafter converting this case to case under another chapter of the Bankruptcy Code and shall be binding upon any trustee appointed in this case or in any subsequent case or proceeding that may filed by the Debtor.

**ENTER**: This _____ day of March 2011.

_____
United States Bankruptcy Judge

I ask for this:

_____
Christopher L. Perkins (VSB No. 41783)
Christian K. Vogel (VSB No. 75537)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone:  (804) 783-2003
Facsimile:  (804) 783-2294

Counsel for First Capital Bank

Seen:

/s/_____
Robert A. Canfield, Esquire
Canfield, Baer, & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230

Counsel to Debtor

**<u>CERTIFICATE</u>**

I hereby certify that the foregoing proposed order has been endorsed by all

necessary parties.

/s/_____
Christopher L. Perkins

<u>**SERVICE LIST**</u>

Mr. Henry L. Wilton
12671 River Road
Henrico, Virginia 23238
*Debtor*

W. Clarkson McDow, Jr.
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia 23219
*U.S. Trustee*

Robert A. Canfield, Esquire
Canfield, Baer, & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
*Counsel to Debtor*

Lynn Tavenner, Esquire
Tavenner & Beran
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
*Counsel to Debtor*