# IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## AMENDED AND RESTATED PROMISSORY NOTE
### (With Security Agreement)

$2,000,000.00

February 8, 2008
Richmond, Virginia

**FOR VALUE RECEIVED**, HENRY L. WILTON and CINDY H. WILTON (individually or collectively as the context may require, "Maker"), each a resident of the Commonwealth of Virginia having an address of 12671 River Road, Goochland, Virginia 23238, unconditionally, jointly and severally promise to pay to the order of RUFFIN & PAYNE, INCORPORATED, a Virginia corporation ("Payee" and, together with any subsequent holder of this Note, "Holder"), at the office of Payee at 4200 Vawter Avenue, Richmond, Virginia 23222, or at such other place as Holder may from time to time designate in writing, the principal sum of TWO MILLION AND NO/100 DOLLARS ($2,000,000.00), or such lesser principal amount as may be advanced to Maker under the terms hereof, payable on the terms and dates and in the amounts as hereinafter provided, and to pay interest on the outstanding principal balance of this Note from the date hereof as provided herein. This Note increases, extends, amends and restates in its entirety the $500,000 Promissory Note of Borrower dated August 28, 2007, payable to the order of Payee (the "Prior Note"), and this Note is executed and delivered to Payee as a replacement and in substitution for the Prior Note. The execution and delivery of this Note shall not constitute a novation of the debt originally evidenced by the Prior Note.

1.    **Advances.**

(a)    Maker may request advances from time to time under this Note, provided that (i) each advance shall be in increments of $250,000 or any integral thereof, (ii) the aggregate amount of all such advances shall not exceed $2,000,000, and (iii) the making of any advance after December 31, 2008, shall be subject to Holder's approval, which approval may be given or withheld by Holder in its sole and absolute discretion.

(b)    Maker acknowledges that the initial outstanding principal balance of this Note, after giving effect to the advance made on the date hereof, is $750,000.00. Maker hereby authorizes Holder to record on <u>Schedule A</u> attached to this Note (or otherwise in the books and records of Holder) the amount and date of each advance and prepayment hereunder. Such schedule shall, in the absence of manifest error, be conclusive as to the outstanding principal balance of this Note; provided, however, Holder's error in making or failure to make any such notation shall not limit or otherwise affect the obligations of Maker hereunder.

(c)     The loan evidenced by this Note is a revolving loan.  Subject to the terms and conditions of Paragraph 1(a) above, amounts advanced and repaid hereunder may be reborrowed.

## 2.     **Payment Terms.**

(a)     Accrued interest on the outstanding principal balance of this Note will be due and payable on the tenth (10th) day of each month, commencing on February 10, 2008, on any date on which all or any portion of the principal of this Note is prepaid, and on the Maturity Date (as hereinafter defined).  Accrued interest under the Prior Note that remains unpaid on the date hereof shall also be due and payable on February 10, 2008.

(b)     On January 31, 2010 (subject to earlier call as set forth below, the "Maturity Date"), the entire outstanding principal balance of this Note, together with all unpaid accrued interest hereon and all other amounts then owing hereunder, will be immediately due and payable in full.

(c)     Notwithstanding the foregoing, Holder shall have the right to call this Note and demand payment in full of the entire outstanding principal balance hereof, together with all unpaid accrued interest hereon and all other amounts then owing hereunder, on any date occurring on or after October 1, 2008 (the "Call").  To exercise the Call, Holder shall provide Maker notice specifying the date on which the Call shall be effective (the "Call Date"), which Call Date shall be not fewer than sixty (60) days after the date of such notice.  On the Call Date the entire outstanding principal balance of this Note, together with all unpaid accrued interest hereon and all other amounts then owing hereunder, will be immediately due and payable in full.

**3.     Interest Rate.**  The outstanding principal balance of this Note will bear interest at a fixed interest rate equal to eight and one-quarter of one percent (8.25%) per annum, computed on the basis of the actual number of days elapsed over a year of 365 days.

**4.     Late Charge.**  In the event Maker fails to pay any installment of principal (whether at stated maturity, upon acceleration or otherwise) or interest on this Note within seven (7) days after its due date, Maker shall pay to Holder on demand a late charge equal to five percent (5%) of the amount due.

**5.     Prepayment.**  Maker shall have the right to prepay this Note in whole or in part at any time, provided that any partial prepayment shall be in increments of $250,000.  If Maker makes any prepayment on or after August 1, 2008, such prepayment shall be without premium or penalty.  If Maker makes any prepayment before August 1, 2008, that causes the outstanding principal balance of this Note to be less than $750,000.00, Maker shall pay to Holder on demand a prepayment fee equal to 30-days' interest (at the rate set forth in Paragraph 3 above) on the amount so prepaid.

**6.     Waivers.**  Presentment, demand, protest, notice of dishonor and any other notice of any kind are hereby waived by Maker and all endorsers hereon.  Maker hereby agrees to pay all costs of collection, including reasonable attorneys' fees, if after the occurrence of an Event of Default (as hereinafter defined) this Note is placed in the hands of an attorney or a collection

agency, or if after the occurrence of an Event of Default, Holder finds it necessary or desirable to secure the services or advice of an attorney with regard to collection.

7. **Collateral.** As security for the repayment of the principal of, all interest, late charges, prepayment fees and all other charges (including without limitation attorneys' fees and costs) now or hereafter due hereunder (and all renewals, extensions, modifications or substitutions hereof), Maker hereby pledges and grants to Holder a security interest in the following (collectively, the "Collateral"):

(a) 942.89 shares of Class A Common Nonvoting Stock of The Wilton Companies, Inc., represented by Certificate No. 26D, 523.00 shares of Class A Common Nonvoting Stock of The Wilton Companies, Inc., represented by Certificate No. 54B, and 636.02 shares of Class A Common Nonvoting Stock of The Wilton Companies, Inc., represented by Certificate No. 57 (collectively, the "Shares");

(b) all rights to which Maker is now or may hereafter become entitled by virtue of owning the Shares; and

(c) all products and proceeds of the foregoing.

The original certificates and instruments representing the Shares, together with appropriate stock powers therefor signed in blank, shall be physically delivered to and held by Holder until all obligations under this Note are indefeasibly paid and performed in full.

Maker hereby covenants and agrees that (i) Maker will not further pledge, assign, transfer, grant a security interest in or otherwise encumber the Collateral or any portion thereof, (ii) Maker will defend the Collateral against all claims and demands of all persons or entities at any time claiming any interest therein, and (iii) Maker will, from time to time, at Maker's expense, promptly execute, deliver, file and record (as appropriate) all further instruments and documents, and take all further action as Holder may deem necessary or advisable in order to perfect, continue and protect the security interests and liens granted hereby or to enable Holder to exercise and enforce its rights and remedies hereunder with respect to the Collateral or any part thereof.

8. **Events of Default; Remedies.** Each of the following events shall constitute an event of default (each, an "Event of Default") under this Note:

(a) Maker shall fail to pay any installment of principal (whether at stated maturity, upon acceleration or otherwise) or interest when due hereunder, and such failure shall continue for a period of ten (10) days; or

(b) Maker shall fail to pay any late charge, prepayment fee or any other charge when due hereunder, and such failure shall continue for a period of ten (10) days after demand therefor; or

(c) (i) a petition under any bankruptcy law is filed by or against Maker; (ii) any substantial part of Maker's assets shall be sequestered or attached and shall not have been returned to the possession of Maker or released from such attachment within thirty (30)

days; or (iii) Maker shall be generally not paying its debts as such debts become due, shall become insolvent or unable to meet its obligations as they mature, or shall admit in writing its inability to pay its debts as they mature.

Upon the occurrence of an Event of Default described in clause (c) above, (i) the entire outstanding principal balance of this Note together with all accrued interest hereon shall automatically become immediately due and payable without presentment, demand, protest, notice of dishonor or any other notice of any kind, all of which are hereby expressly waived, and (ii) Holder may proceed to enforce payment of this Note and to exercise any and all rights and remedies hereunder or otherwise available to Holder.

Upon the occurrence of any Event of Default other than an Event of Default described in clause (c) above, Holder may, at its option, take any or all of the following actions at the same or different times without notice to Maker or any other party of any kind: (i) declare this Note to be forthwith due and payable, both as to principal and interest, whereupon the entire principal balance of this Note and all accrued interest hereon shall become immediately due and payable without presentment, demand, protest, notice of dishonor or any other notice of any kind, all of which are hereby expressly waived, anything herein to the contrary notwithstanding and/or (ii) proceed to enforce payment of this Note and to exercise any and all rights and remedies hereunder or otherwise available to Holder.

Upon the occurrence of any Event of Default hereunder, Holder shall, in addition to its other rights and remedies, have all of the rights and remedies of a secured party under the Virginia Uniform Commercial Code. Holder will give Maker reasonable notice of the time and place of any public sale of the Collateral or any portion thereof or of the time after which any private sale or other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Maker set forth in the first paragraph of this Note at least five (5) calendar days before the time of the sale or disposition, but nothing contained herein shall be construed to mean that any other form of notice or shorter period of time does not constitute reasonable notice for the sale or other disposition of the Collateral or any portion thereof. Expenses of retaking, holding, preparing for sale, selling or the like shall include the reasonable attorneys' fees and expenses of Holder.

Maker acknowledges that (a) upon the occurrence of an Event of Default, any disposition of the Collateral shall be made in accordance with applicable securities laws and regulations, which securities laws and regulations may require that the Collateral be offered only to prospective purchasers who are financially sophisticated and can afford the risk of a speculative investment, and that Holder may not be able to offer the Collateral to any person or entity that does not meet such criteria, (b) Holder may be required to sell the Collateral only as a block and not permit any purchaser to acquire less than all of the Collateral, and (c) the purchaser may be required to represent in writing that the Collateral is being acquired for the purchaser's own account and not with a view to the sale or distribution thereof and will not be sold by the purchaser except pursuant to an effective registration statement under the Securities Act of 1933 or pursuant to a valid exemption from the registration requirements of that Act.

9. **Confession of Judgment.** Maker hereby irrevocably appoints Gene E. Webb, Esquire and Michael E. Lacy, Esquire, either of whom may act alone, as its true and lawful

attorney-in-fact, to: (i) appear before the Clerk of the Circuit Court of the City of Richmond, Virginia, at any time after the occurrence of an Event of Default hereunder, (ii) waive the issuance and service of process, and (iii) confess judgment against Maker in the total amount of the unpaid principal balance of this Note together with all accrued interest, late charges, prepayment fees and other charges due and payable hereunder, together with all costs of confessing and entering judgment and all attorneys' fees as provided herein, and to waive and release any errors in said proceeding and consent to the immediate execution upon said judgment. Maker hereby ratifies and confirms all that said attorney or attorneys may do pursuant to the foregoing power.

      **10.**    **Submission to Jurisdiction; Venue.** Maker hereby agrees that any suit, action or proceeding arising out of or relating to this Note may be instituted against Maker in, and Maker hereby submits to the personal jurisdiction of, the General District Court for the City of Richmond, Virginia, the Circuit Court for the City of Richmond, Virginia, or the United States District Court for the Eastern District of Virginia (assuming that such latter court has jurisdiction over such suit, action or proceeding), at the sole option of Holder, and Maker hereby waives any objection which it or any of them may have to the laying of venue of any such suit, action or proceeding, and irrevocably submits to the jurisdiction of any such court in such suit, action or proceeding.

      **11.**    **Expenses of Payee.** Maker hereby agrees to pay on demand all expenses incurred by Payee in connection with the preparation of this Note and all related documents, including but not limited to the reasonable fees and expenses of counsel for Payee.

      **12.**    **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

      **IN WITNESS WHEREOF**, Maker has caused this Note to be executed under seal as of the date first written above.

_____(SEAL)
HENRY L. WILTON

_____(SEAL)
CINDY H. WILTON

#1696795v3
202512.003

## SCHEDULE A

## ADVANCES AND PREPAYMENTS

| Date | Amount of Advance | Amount of Prepayment | Outstanding Principal Balance |
|---|---|---|---|
| 2/8/2008 | $750,000.00* | | $750,000.00 |
| 2/11/2008 | $250,000.00 | | $1,000,000.00 |
| 4/21/2008 | $250,000.00 | | $1,250,000.00 |
| 7/2/2008 | $100,000.00 | | $1,350,000.00 |
| 7/9/2008 | $150,000.00 | | $1,500,000.00 |
| 8/5/2008 | $250,000.00 | | $1,750,000.00 |
| 8/12/2008 | ~~$1,000,000.00~~ | $1,000,000.00 $1,000,322.17 | $750,000.00 |
| 9/4/2008 | $250,000.00 | | $1,000,000.00 |

* Includes the outstanding principal balance of the Prior Note as of the date of this Note.

\*\* ONE TIME EXCEPTION TO $250,000.00 UNIT DRAW TERMS *initials*

\*\*\* TO BRING 7/2 DRAW UP TO $250,000.00 UNIT DRAW *initials*

## SCHEDULE A CONTINUED

## ADVANCES AND PREPAYMENTS

| Date | Amount of Advance | Amount of Prepayment | Outstanding Principal Balance |
|------|-------------------|----------------------|-------------------------------|
| 10/15/2008 | 500,000.00 | | $1,500,000.00 |
| 10/24/2008 | 250,000.00 | | 1,750,000.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |