UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HENRY L. WILTON, | ) | Case No. **10-36398** |
| | ) | |
| Debtor. | ) | |

**OBJECTION BY FIRST CAPITAL BANK TO *CONSENT MOTION
TO APPROVE COMPROMISE AND TO AUTHORIZE SALE OF
PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL
LIENS AND INTERESTS* FILED BY MOUNTAIN INVESTMENTS, LLC**

First Capital Bank ("**First Capital**") by counsel, hereby objects to the Consent Motion to Approve Compromise and to Authorize Sale of Property of the Estate Free and Clear of All Liens and Interests (the "**Sale/Settlement Motion**") filed by Mountain Investments, LLC ("**Mountain**") and Henry L. Wilton (the "**Debtor**") and in support of its objection (the "**Objection**") respectfully states:

**PRELIMINARY STATEMENT**

1. The Sale/Settlement Motion is a thinly-veiled attempt by insiders of The Wilton Companies to manipulate the Bankruptcy Court to allow them to take control of the Wilton Companies by purchasing shares of stock and membership interests (collectively referred to herein as "shares") at well-below market value and through inappropriate use of leverage over an otherwise non-consenting Debtor. The two agreements attached to the Sale/Settlement Motion are intentionally vague and lacking critical information necessary for this Court and the creditors

---

Christopher L. Perkins (Va. Bar No. 41783)
Christian K. Vogel (Va. Bar No. 75537)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 783-2003

*Attorneys for First Capital Bank*

to determine: (i) who are the true parties-in-interest in the proposed transaction; (ii) who are the real beneficiaries (and losers) if this Court were to approve it; and (iii) whether the sale price is fair and reasonable. As described below, these missing details seriously call into question the value of this transaction for creditors of the estate as well as raise doubts as to the motives of the moving parties.

2. There are simply too many important, unanswered questions to allow the Sale/Settlement Motion to be approved at this time without appropriate scrutiny, given that the true parties to the transaction are *insiders* of the Debtor. The Wilton Company, Inc., Wilton Company, LLC, and E.C. Wilton are obvious insiders. While cleverly obscured in the text of the Sale/Settlement Motion, it is commonly known that Mountain is a newly created entity controlled by two major shareholders of the Wilton Companies, Inc.: (i) the President and Chairman of the Board, Richard S. Johnson ("**Johnson**"), and (ii) Senior Vice President and Director, Rodney Poole ("**Poole**"). On information and belief, Johnson and Poole are using The Companies (in Agreement A) and Mountain (in Agreement B) as "straw men" to obtain Bankruptcy Court approval of the transaction contemplated by the Sale/Settlement Motion, notably *without prior* Wilton Company Board approval, and with the intention of transferring ownership of the shares to Johnson and Poole individually.[1]

3. Moreover, it has recently been revealed that The Wilton Companies, by affirmative vote of the Debtor and the other two Board members (Sam and Bryan Kornblau) have undertaken the appointment of a special investigator, attorney John O'Brion of The McCammon Group, to investigate certain acts of The Wilton Companies, Johnson, and Poole

---

[1] In Agreement A, the purchaser is vaguely identified as "the Companies (*or assigns*)". With respect to Agreement B, the Shareholders' Agreement for The Wilton Companies, Inc. provides that only *individuals* may hold shares in the company to preserve the company's subchapter S tax status. Thus, Mountain could never have held title to shares in the first place – yet appears to be the acquiring entity in Agreement B.

2

("**Investigation**"), including the transaction at the heart of the Sale/Settlement Motion. *See* Exhibit 1 attached hereto.

4. Mountain's lack of candor with the Court regarding the identity of the parties to this transaction and the existence of the Investigation is disturbing to say the least.[2]

5. The Sale/Settlement Motion seeks to inappropriately accomplish among other things: (i) a sale of what appears to be the majority of the Debtor's remaining, potentially unencumbered assets for questionable value and before conversion of the case to one under chapter 7; and (ii) the acquisition by "Mountain" of the Debtor's voting shares of stock which serve as collateral for the Debtor's obligation to Bank of Hampton Roads ("**BOHR**"), which obligation Mountain recently purchased.[3] Significantly for Mountain (truly Johnson and Poole), the Sale/Settlement Motion would result in the Debtor foregoing his "veto" power on the five-member Wilton Companies Board.

6. The Sale/Settlement Motion fails to satisfy the sound business purpose test, is not in the best interests of the Debtor's estate, is not proposed in good faith, and fails to demonstrate that the sale process was fair and reasonable.[4] While it was "suggested" in the Sale/Settlement Motion that $630 per share is a fair price, the Sale/Settlement Motion wholly fails to describe any marketing effort to "test the waters."

---

[2] The fact that the Sale/Settlement was initially scheduled on an expedited basis – with no apparent justification – is further evidence of Mountain's furtive efforts. Clearly, the "emergency" for Mountain is to push this deal through this Court before the Investigation is concluded.

[3] Mountain filed a Transfer of Claim Other Than For Security on May 25, 2011 [Docket No. 141]. The terms of the transaction between Mountain and BOHR are apparently subject to a confidentiality agreement which prohibits the Court and creditors from learning the details surrounding the value of that deal. Through the Sale/Settlement Agreement, "Mountain" now seeks to acquire the collateral - the Debtor's shares - in satisfaction of the obligation. That transaction is the focus of the Investigation.

[4] Indeed, given the Debtor's comments to the media, it is questionable whether the Sale/Settlement Motion is, in fact, an arm's length negotiation. *See* Exhibit 2 attached herein wherein the Debtor contends the consideration for his shares "is a very low price." Conspicuously, it is Mountain that prepared and filed all relevant pleadings related to the Sale/Settlement Motion - the Debtor is not leading the push for this transaction. In fact, the Debtor appears to

3

7. Recent evidence suggests the price is extremely low. The Sale/Settlement Motion omits the fact that of the four sales in the last year, three were at a higher price per share – in some cases substantially. *See* Exhibit 3 attached hereto. Notably the three higher sales all occurred in the last three months and were public auctions, whereas the one lower sale was a private sale and occurred over a year ago. In addition, no current financial information regarding the Wilton Companies has been proffered. On information and belief, the companies are performing better than the market and the shares are worth well in excess of the sale price. Indeed, the Debtor himself conceded in his 341 meeting in October 2010, that a valuation by Bob Raymond & Associates two years ago had opined a per share value of over $1,250.

8. Additionally, the Sale/Settlement Motion seeks to "blend" the per share price between The Wilton Companies, LLC and The Wilton Company, Inc., when in fact the shares of the two companies have traditionally had very different values, with "Inc." shares having a significantly greater value. *See* Exhibit 4.

9. The limited available information provided in the Sale/Settlement Motion reflects significant benefits to the insiders and limited net benefit to the Debtor's estate. Even with the influx of $1.5 million into the estate (assuming E.C. Wilton's lien is not valid – and neither the Debtor nor any other party has taken action to determine the validity of that lien), the net result to $61 million worth of creditors is minimal.

10. Finally, the Court's analysis of the Sale/Settlement Motion should be made in light of the Debtor's stated intention to convert the case to one under chapter 7, with a subsequent trustee bound by the significant releases given by the Debtor to the Companies,

---

be questioning the wisdom of the deal as evidenced by his vote to approve the pending Investigation. One might surmise the only reason the Debtor is "going along" with the deal is the promise of continued employment, salary, health benefits, and the ability to maintain his residence (and limit his wife's liability) – which was additional collateral for the BOHR note that Mountain purchased.

4

Poole, Johnson, and Mountain. While they are receiving the benefit of releases from the Debtor, Poole and Johnson themselves are not even parties to the agreements in the Sale/Settlement Motion.

11. As a holder of an obligation secured by shares of The Wilton Company, Inc. and creditor of the Debtor, First Capital's collateral is significantly impaired by the sale price proposed in the Sale/Settlement Motion. To the extent it is under-secured, First Capital's pro rata share of any distribution to unsecured creditors would be adversely impacted by the Sale/Settlement Motion. First Capital suggests the prudent course of action is to either (a) continue the Sale/Settlement Motion until such time as: (i) the Investigation can be concluded; and/or (ii) appropriate discovery regarding the unknown facts raised herein can be conducted including the critical issues regarding the appropriate valuation of the respective shares of the LLC and corporation; or alternatively, (b) appoint a special examiner or chapter 11 trustee and/or immediately convert the case to one under chapter 7 to allow a trustee the opportunity to investigate the propriety of the Sale/Settlement Motion.

## BACKGROUND

12. On or about November 2, 2007, the Debtor executed: (i) a Promissory Note in favor of First Capital in which the Debtor promised to repay First Capital the principal amount of $3,500,000.00, and (ii) a Commercial Pledge Agreement granting First Capital a security interest in 3,049.9984 non-voting shares of stock of The Wilton Companies, Inc. As of the Petition Date, the Debtor owed First Capital in excess of $3.4 million in principal payments. The amount of the loan was based on a price per share of The Wilton Companies, Inc. stock of $1,147.54.

13. The Debtor filed his petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") on September 16, 2010 (the "**Petition Date**").

14. The Debtor remains in possession of his property but has indicated an intent to convert the case to one under chapter 7 following the approval of the Sale/Settlement Motion.

15. At the October 15, 2010, section 341 hearing, the Debtor testified that he was aware of a two-year old appraisal by Bob Raymond & Associates valuing the "shares" at $1,250 per share.[5]

16. On March 31, 2011, the Board of Directors approved, 3-0 (with Johnson and Poole abstaining), a motion to appoint an independent auditor to examine the Company's role and the structure, organization, and effectuation of the purchase of the note held by BOHR by Mountain; the exploration of the ramifications and negative consequences, if any, affecting the shareholders of the Companies; and the exploration of any breach of fiduciary duty as it relates to a conflict of interest resulting from any transaction.

17. On May 25, 2011, Mountain filed its Transfer Of Claim Other Than For Security [Docket No. 141] reflecting its acquisition of the Debtor's Note formerly held by BOHR.

18. Two days later, on May 27, 2011, Mountain filed its Motion For Relief From The Automatic Stay And Notice Of Motion And Hearing [Docket No. 143] seeking relief as against the Debtor and his spouse to pursue all state court rights with respect to their Richmond residence and certain North Carolina vacation property. A hearing on the Motion for Relief has been continued to July 20, 2011, to coincide with the Sale/Settlement Motion.

19. On June 24, 2011, the Debtor and Mountain filed the Sale/Settlement Motion seeking approval of two agreements dated June 21, 2011, and attached to the Sale Motion as Exhibits A and B ("**Agreement A**" and "**Agreement B**" respectively). Agreement A is among the Debtor, his father, and the Companies and provides for, among other things:

---

[5] The Debtor did not distinguish between Inc. shares and LLC interests.

    a. the sale of certain membership interests in The Wilton Companies, LLC and certain shares in The Wilton Companies, Inc. owned by the Debtor to the Companies (or its assigns);

    b. a guaranteed salary and benefits from the Companies for the next six (6) years for the Debtor;

    c. releases by the Debtor of the Companies, Rodney M. Poole, Richard S. Johnson and Mountain; and

    d. the Debtor's resignation of all offices or board of director memberships with the Companies.

Notably, Agreement A is executed on behalf of the Companies by Johnson as President, but clearly concedes that Board approval has not been obtained. In addition, the Companies – anticipating some "fall out" from the transaction, agree "to bear the cost of any litigation or court proceeding that may arise relating to the transfer of the Shares other than that which is necessary for Bankruptcy Court Approval."

    20. Agreement B provides for:

    a. the sale to Mountain of certain other membership interests in Wilton, LLC owned by the Debtor;

    b. the transfer of additional shares in Wilton, Inc. and membership interests in Wilton, LLC to Mountain in satisfaction of a note owed by the Debtor and his wife to BOHR that was purchased by Mountain;

    c. releases by the Debtor of the Companies, Rodney M. Poole, Richard S. Johnson and Mountain;

    d. releases by Mountain of any claims pursuant to the note and judgment purchased by Mountain from BOHR against the Debtor and his wife; and

    e. the Debtor's resignation of all offices or board of director memberships with the Companies.

    21. Also on June 24, 2011, Mountain filed a Notice of Expedited Hearing [Docket 174] seeking to have the Sale/Settlement Motion heard on an expedited basis on July 12, 2011,

for the vague reason that "parties involved in the transactions contemplated in the Motion are forbearing from taking certain actions in reliance on the approval of the Motion."

22. On July 1, 2011, Mountain filed a motion to continue the hearing on the Sale Motion to July 20, 2011, which was subsequently approved by order of the Court.

**OBJECTION**

23. The proposed transactions are asserted to be both a section 363 sale and a rule 9019 settlement – although it is unclear what is being compromised.[6]

24. It is well established that the debtor has a *duty* to maximize the value obtained from a sale. *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998). With respect to sales under §363(b), this Court has adopted the "sound business purpose test." *See In re W.A. Mallory Company, Inc.,* 214 B.R. 834 (Bankr. E.D. Va. 1997); *In re WBQ P'ship v. Va. Dep't of Medical Assistance Servs.* (*In re WBQ P'ship*), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (holding that for a sale motion to be approved the debtor must prove "(1) a sound business reason or emergency justifies a pre-confirmation sale; (2) the sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to interested parties; and (4) the purchase price is fair and reasonable.[7]"). With respect to factors (2) and (4), this Court has noted that "[w]hile not entirely similar, these two criteria work interdependently. Good faith requires the Court to scrutinize the sales to insure they are arm's length transactions and absolutely fair under the

---

[6] With respect to settlements under Bankruptcy Rule 9109, this Court must look at various factors and determine whether the proposed "settlement" is in the best interest of the estate and whether it is fair and equitable to the creditors of the estate. *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D. Va. 1997). Mountain identifies the relevant factors as: (1) the probability of success in litigation; (2) the potential difficulties, if any, in collection; (3) the complexity of the litigation involved and the expense, inconveniences and delays necessarily attending it; and (4) the paramount interest of the creditors. *Id*. Yet, the Sale/Settlement Motion fails to describe what litigation is being resolved and what consideration is being exchanged for releases to third parties, Poole and Johnson. What is readily apparent is that the Debtor is being forced to "settle" for the sale of his shares at an unreasonably low price in exchange for dismissal of the Motion for Relief from Stay as to his personal residence.

[7] With respect to the fourth factor, this Court has previously queried "have the assets been *aggressively* marketed in an active market?" *In re On-Site Sourcing, Inc.*, 412 B.R. 817, 824 (Bankr. E.D. Va. 2009)(emphasis added).

8

circumstances." *Mallory*, 214 B.R. at 837 (denying sale to insiders where debtor failed to market to the public). The Sale/Settlement Motion woefully fails to meet this standard.

25. As the facts discussed in the Preliminary Statement and Background Sections above demonstrate, the Sale/Settlement Motion: (i) is not fair and equitable to the creditors of the estate as the price per share lacks any valid basis given the existence of recent public sales, recent valuations, the lack of any – much less aggressive – marketing, and the fact that the purchasers are insiders; (ii) lacks a sound business reason on the part of the Debtor – in fact the Debtor's involvement appears to be made under duress; and (iii) is not proposed in good faith as evidenced by the insiders' lack of candor with the Court, the existence of the Investigation and the effort to obtain releases for Johnson and Poole.

    **A.**    **The purchase price is not fair and reasonable.**

26. As noted, Mountain – not the Debtor – is leading the charge to have the Sale/Settlement Agreement approved. Both Mountain and the Debtor have failed to provide sufficient information to establish that the purchase price is the best price that can be obtained or even represents the fair market value. Although the Sale/Settlement Motion alleges that shares and membership interests in the Companies have sold for between $400 and $800 per share, Exhibit 3 reveals that recent sales actually defeat Mountain's argument and in fact support a higher sale price. The 3 public sales in the last few months have resulted in a per share price of $755. Moreover, this Court has held that "a proposed purchase price is deemed **not** fair and reasonable unless it equals at the very least the lesser of an acceptable appraised value or the tax assessment value." *Mallory*, 214 B.R. at 838 (emphasis in original). No such evidence has been presented here.

27. Further, the private transaction between Mountain and BOHR[8] for the sale of a note secured by shares, is subject to a confidentiality agreement, thus prohibiting any consideration of that transaction. And that deal is the subject of the Investigation *instituted by the Debtor*. Moreover, no financial information regarding the Companies themselves has been proffered – presumably because it would reveal the financial strength of the organization and a much higher value for its shares. The Debtor himself testified that an appraisal two years ago reflected a value of $1,250 per share and has commented publicly that Mountain's offer is a "very low price."

28. To further confuse the analysis, the Agreements refer to a blended rate of $630.91 per share of Inc. or membership interest in LLC. Using a blended rate makes it impossible to determine the sufficiency of consideration being provided through the Agreements and is inconsistent with prior valuations provided by the Debtor to First Capital. *See* Exhibit 4.

29. The flawed sale process and the insider nature of the deal further reflect the lack of a fair and reasonable price. The proposed sales include shares and membership interests for which there is a proven market, yet the Debtor has chosen to conduct a private sale to insiders at a blended rate, offering very no meaningful support as to how he reached the final sale price. As the *Mallory* court noted when confronted with a proposed 363 sale to insiders, the concern is "whether the sales are truly at arm's length or an attempt by the debtor to abuse the bankruptcy process to discharge unwanted debt." 214 B.R. at 837. The self-dealing by Poole and Johnson, their undue influence over the Debtor and his wife, and the lack of candor with the Court suggest such abuse is occurring here.

---

[8] As has been widely discussed in the media, BOHR has faced significant financial and regulatory challenges in recent times. It's President, who joined the bank in June 2010, resigned last week. The value at which the bank was willing to part with its note should be considered in light of those circumstances.

30. Most critically, there is no evidence of *any* effort on the part of the Debtor to aggressively market the shares to the public. As this Court observed, the assets "should have been offered to the public in some fashion before the Court in good conscience could approve such insider sales. The debtor cannot simply represent that there is no public, non-insider interest in the subject [asset], the debtor must show the Court that the [assets] are being sold for the highest attainable price." *Id*. at 838. The same holds true for the Sale/Settlement Motion. This bankruptcy was filed in September 2010. The Debtor has had ample opportunity to conduct such efforts.

B. **The Debtor lacks a sound business reason for the sale.**

31. Here, there is no emergency or need for a pre-confirmation sale of the Debtor's shares as the Debtor has conceded he will not even seek to propose a chapter 11 plan. As the chronology of the case makes clear, the Debtor is not a willing participant in this transaction and it was not an arm's length negotiation. Mountain obtained significant leverage over the Debtor in or around March through its purchase of the BOHR note for which the Debtor's residence and his wife's guaranty were pledged. Then in May, Mountain moved for relief from stay as to the Debtor's residence, which motion it intends to withdraw if the Sale/Settlement Agreement is approved. In June, the Debtor was coerced into signing Agreements A and B selling his shares for far less than they are worth. As the Debtor stated publicly, "either I had to sign it exactly the way they wanted or they were going to pull the deal and put my wife into bankruptcy, and I didn't want to do that to her." *See* Exhibit 1.

32. To top off the deal, Mountain insisted that the Debtor resign his Board position and provide blanket releases to Poole and Johnson – who are not even parties to the transaction. Indeed, Agreement A suggests that it "represents a compromise of controversies between Wilton

11

and the Companies" but fails to detail the nature of those claims being compromised. And, the Debtor intends to convert his case to Chapter 7, thus binding a trustee to the releases. To the extent the Debtor, as the holder of shares securing First Capital's loan, is releasing potential derivative claims against Wilton, Inc., First Capital and similarly situated creditors have a strong interest to better understand those releases prior to approval of the Sale/Settlement Motion.

    **C.**    **The transaction is not proposed in good faith.**

33. The numerous instances of Mountain's lack of good faith and candor with the Court need not be repeated again here. Suffice it to say, the true beneficiaries of the Sale/Settlement Motion are not the creditors, but the insiders. If the Sale/Settlement is approved:

    a. Poole and Johnson (through their "straw men," Mountain and the Companies) get (i) complete control over the Companies with the Debtor's Board position and veto rights erased; (ii) several thousand shares of a profitable Richmond institution at a price per share that is far less than their true value., and (iii) releases from all potential claims the Debtor may have against them;

    b. E. Carlton Wilton potentially receives $1.35 million from the sales and a release of all claims the Debtor may have against him;

    c. Cindy L. Wilton and the Debtor avoid all liability on the BOHR note and maintain their residence which would otherwise be sold to pay down the liability to BOHR;

    d. The Companies receive a release of all claims the Debtor may have; and

    e. The Debtor receives guaranteed employment and benefits for the next six (6) years.

34. In contrast, the Estate and its creditors receive $151,747.23 and a release of an approximately $3,036,784.05 general unsecured claim based on a $630.91 price per share/membership interest.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, First Capital respectfully requests that the Sale/Settlement Motion be denied and that the Court grant such further relief as it deems just and proper.

                                                  FIRST CAPITAL BANK

                                                  /s/Christopher L. Perkins
                                                  Counsel

Christopher L. Perkins (Va. Bar No. 41783)
Christian K. Vogel (Va. Bar No. 75537)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
(804) 783-2003

*Attorneys for First Capital Bank*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July 2011, a true and correct copy of the foregoing objection was served on all persons receiving electronic notice in these cases, including the following:

W. Clarkson McDow, Jr.
Office of the U.S. Trustee
701 E. Broad St., Suite 4304
Richmond, Virginia 23219
*U.S. Trustee*

Robert A. Canfield, Esquire
Canfield, Baer, & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
*Counsel to Debtor*

Lynn Tavenner, Esquire
Tavenner & Beran
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
*Counsel to Debtor*

Loc Pfeiffer
Jeremy S. Williams
Kutak Rock, LLP
1111 East Main Street, Suit 800
Richmond, Virginia 23219
*Counsel for Mountain Investments, LLC*

/s/ Christopher L. Perkins