

## LECLAIRRYAN

June 16, 2011

Christopher C. Spencer, Esq.
6808 Paragon Place, Suite 200
Richmond, Virginia 23230

    Re:    **Kornblau/The Wilton Companies**
            The McCammon Group Case No. 2011000591

Dear Mr. Spencer:

Buddy directed me to forward to you the enclosed per the telephone conference with Mr. OBrion last week.

With respect to Exhibit 8, we anticipate continuing to synthesize the areas of examination, so the list may be shortened numerically.

Please let me know if you have any questions.

Sincerely,

Robert Wm. Best

Enclosure
cc:    John H. OBrion, Esq.



E-mail: robert.best@leclairryan.com
Direct Phone: 804.915.4133
Direct Fax: 804.545.1501

701 East Byrd Street, Mailing: Post Office Box 2499
Richmond, Virginia 23218-2499
Phone: 804.545.1500 \ Fax: 804.545.1501

CALIFORNIA \ CONNECTICUT \ MASSACHUSETTS \ MICHIGAN \ NEW JERSEY \ NEW YORK \ PENNSYLVANIA \ VIRGINIA \ WASHINGTON, D.C.

ATTORNEYS AT LAW \ WWW.LECLAIRRYAN.COM

## Background Information for Mr. OBrion

In 2002, The Wilton Companies, LLC (the "LLC") was formed to acquire a portfolio of commercial real estate properties in the Richmond metropolitan area and The Wilton Companies, Inc. (the "Company") was formed for the purpose of acquiring all of the stock of certain corporations that own commercial real estate properties in the Richmond metropolitan area.

### I.     The Wilton Companies, LLC.

**Governing Documents.** On August 10, 2002, Henry L. Wilton ("Wilton"), Richard S. Johnson ("Johnson"), Rodney M. Poole ("Poole") and the LLC executed a Members' Agreement, which imposed restrictions on the transfer of their voting and nonvoting shares in the LLC and provided general governance. In particular, Section 13 provided that Wilton had a "veto" power over certain issues that may be brought to the Board of Directors if Johnson and Poole are on one side and Wilton on the other. The Members' Agreement was amended on December 12, 2002 and on December 22, 2004. On May 13, 2010, Wilton, Johnson, Poole, and the LLC executed an Amended and Restated Members' Agreement (which maintained the "veto" authority held by Wilton). The Members' Agreements and amendments are attached as **Exhibit 1**.

On October 1, 2002, Wilton, Johnson, and Poole, as initial members, executed the Operating Agreement. Under the Operating Agreement, Wilton was designated as the Chairman, Johnson as the President/CEO, and Poole as the Senior Vice President/General Counsel, which positions each still occupies. Wilton, Johnson, and Poole also comprised the initial Board of Directors. By virtue of a Contribution Agreement dated December 2002, Bryan Korblau and Sam Korblau (the "Kornblaus") were given seats on the Board of Directors, which seats the Korblaus currently hold. On May 13, 2010, the LLC's shareholders (Wilton, Johnson, and Poole), executed the First Amendment to the Operating Agreement. The Operating Agreement, the First Amendment, and the Contribution Agreement are attached as **Exhibit 2**.

### II.    The Wilton Companies, Inc.

**SCC Filings.** The Company's 2010 Annual Report listed Johnson as the President and Chairman of the Board and Director, Poole as Senior Vice President and Director, Wilton as Chairman (Director), Sam Kornblau as a Director, Bryan Kornblau as a Director, Cameron W. Vaughan as Vice President, and Hunter G. Cockrell as Vice President.

**Governing Documents.** On August 10, 2002, the Company's shareholders (Wilton, Johnson, and Poole)* and the Company executed a Shareholders' Agreement that imposed certain restrictions on the transfer of the Company's shares and provided for general governance. In particular, Section 13 provided that Wilton had a "veto" power

---

* Each holds voting and nonvoting shares. All voting shares are held by Johnson, Poole, and Wilton.

1



over issues that may be brought to the Board of Directors if Johnson and Poole are on one side and Wilton on the other. The Shareholders' Agreement was amended on December 12, 2002 and on December 22, 2004. On October 1, 2002, the Company's Class A shareholders, Wilton, Johnson, and Poole executed a Class A Stock Shareholders' Agreement, which was amended on May 13, 2010. On May 13, 2010, the Company's shareholders, Wilton, Johnson, and Poole, and the Company executed an Amended and Restated Shareholders' Agreement. The shareholder agreements are attached as **Exhibit 3**. On November 12, 2002, the Company's Board approved and adopted the Bylaws, which are attached as **Exhibit 4**.

III.    **Employment Agreements.** Wilton, Johnson, and Poole each have written employment agreements dated December 2, 2002 with Wilton Realty, LLC, which has been engaged by the LLC and the Company to perform certain property management duties. Copies of those agreements are attached as **Exhibit 5**.

IV.    **Proposals to Wilton.** On September 16, 2010, Wilton filed a petition in bankruptcy. Some of Wilton's shares of stock in the LLC and Company serve as collateral, specifically to secure a note that was held by the Bank of Hampton Roads. Mountain Investments, LLC acquired the note. It is believed that Johnson and Poole are involved in Mountain Investments, LLC, and are now trying to acquire Wilton's shares in the LLC. In March, the LLC and the Company made a proposal (attached as **Exhibit 6**) to Wilton pursuant to which Wilton would sell his voting and nonvoting shares in LLC and, among other things, resign his board membership on the boards of the LLC and the Company. That proposal was subsequently revised (attached as **Exhibit 7**).

V.    **Motions for Appointment of an Independent Auditor.** On March 31, 2011, the Board of Directors approved, 3-0 (Johnson and Poole abstained), a motion to appoint an independent auditor to investigate certain issues. On May 18, 2010, the Board of Directors passed a motion to authorize the retention of Mr. O'Brion as an independent auditor.

VI.    **List of Topics.** Attached as **Exhibit 8** is a list of topics submitted by the Kornblaus for examination.



8276430_1

Issues Presented for Mr. OBrion's Examination

1. Whether there was any improper role by The Wilton Companies, Inc. and The Wilton Companies, LLC's (collectively, the "Company") and/or by any of the Company's members, officers, directors, or employees in Mountain Investment, LLC's offer to purchase and/or the actual purchase of a note, including all collateral, guarantees, etc. securing the note and confession of judgment, ("Note") from Bank of Hampton Roads ("BOHR").
2. Whether there was any improper use and/or disclosure of Company assets or information to Mountain Investments, LLC or its members, officers, directors, employees, advisors, agents, etc.
3. Whether any of the Company's members, officers, directors, or employees have any role in Mountain Investments, LLC, including whether disclosures of the same should have been given or were required to be given to the Company's Board of Directors.
4. Whether any of the Company's directors, officers, members, or employees have breached any fiduciary duty (duty of care and/or duty of loyalty) as related to the purchase of the Note from BOHR.
5. Whether the purchase of the Note by Mountain Investments, LLC was a corporate opportunity that should have been presented to the Company.
6. Whether there was/is a conflict of interest for any director/officer/member/ employees involved in the purchase of the Note from BOHR.
7. Whether Mr. Rodney M. Poole ("Poole") had a conflict of interest when he represented Mountain Investments, LLC in the purchase of the Note while also acting as General Counsel to the Company.
8. Whether there were any statements and/or disclosures made or required to be made to Henry L. Wilton ("Wilton") in connection with the BOHR purchase of the Note.
9. Whether there was any improper use and/or disclosure of Company assets and information in the negotiation, drafting, and offer of the proposals made to Wilton by Mountain Investments, LLC for Wilton to sell his Membership Interests ("Shares") in The Wilton Companies, LLC (the "Proposals").
10. Whether there was any improper role by Poole or Johnson in the negotiation, drafting, or offering of the Proposals.
11. Whether there are or will be any adverse effects, ramifications, or consequences to the Company and the Company's shareholders if the Proposals are accepted and implemented.
12. Whether there are approvals required to implement the Proposals.
13. Whether the value offered for Wilton's Shares is fair.
14. Whether there is a relationship between Proposals and the purchase of the Note from BOHR.
15. Whether there is a benefit to holders of the Note and/or members or manager(s) of Mountain Investments, LLC if the Proposals are accepted and implemented.
16. Whether any of the Company's directors/officers/members/employees have breached any fiduciary duty (duty of care and/or duty of loyalty) as related to the negotiation, drafting, or offering the Proposals.
17. Whether there were/are any conflicts of interest for directors/officers/ managers of the Company as related to the Proposals.





18. Whether Poole had a conflict of interest as a member/manager of Mountain Investments, LLC while acting as General Counsel to the Company as related to the Proposals.
19. Whether there are or will be any effects on the governance of the Company if the Proposals are implemented, including whether the Proposals would violate or be inconsistent with the Company's governing documents.
20. Whether Wilton can give Mountain Investments, LLC his proxy before the Proposals receive all required approvals, including by the Company's Board of Directors.

